Jerry TETERUD, Appellee,

v.

Kevin J. BURNS, Individually and in his official capacity as Director of the Department of Social Services for the State of Iowa, et al., Appellants.

No. 75–1066.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1975.

Decided Sept. 4, 1975.

Lorna Lawhead Williams, Sp. Asst. Atty. Gen., Des Moines, Iowa, for appellants.

Roy S. Haber, Walter R. Echo-Hawk, Native American Rights Fund, Boulder, Colo., for appellee.

Allen L. Donielson, U. S. Atty., J. Stanley Pottinger, Asst. U. S. Atty., Brian K. Landsberg, Walter W. Barnett, and Dennis J. Dimsey, Attys., Dept. of Justice, Washington, D. C., filed brief for amicus curiae, United States.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Jerry Teterud, an American Indian inmate of the Iowa State Penitentiary, challenged under 42 U.S.C. § 1983 a prison regulation prohibiting him from wearing long braided hair.[1] He contend-

---

1. The regulation states:

 *Hair Length*—may grow to the shirt collar, and bottom of the ears. May grow over the ears if desired.

 Teterud's administrative request to wear long hair was denied by Warden Brewer.

ed that the regulation deprived him of his rights under the First and Fourteenth Amendments to: (a) freely exercise his religion; (b) freedom of expression; (c) govern his personal appearance; and (d) equal protection of the laws. The complaint prayed for declaratory and injunctive relief. On August 23, 1973, a temporary restraining order issued enjoining enforcement of the regulation. Subsequently, after an evidentiary hearing, the District Court[2] granted relief, finding the regulation unconstitutional under the Free Exercise Clause of the First Amendment.[3] We affirm.

## I

 We determine the constitutionality of the challenged regulation in light of the First Amendment rights asserted and on the basis of the facts adduced at trial. In this determination, we are as vigilant in protecting a prisoner's constitutional rights as we are in protecting the constitutional rights of a person not confined. *See Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Moore v. Ciccone,* 459 F.2d 574, 576 (8th Cir. 1972) (en banc); *Sharp v. Sigler,* 408 F.2d 966, 970 (8th Cir. 1969); *Ross v. Blackledge,* 477 F.2d 616, 618 (4th Cir. 1973); *Neal v. State of Georgia,* 469 F.2d 446, 449 (5th Cir. 1972); *Barnett v. Rodgers,* 133 U.S.App.D.C. 296, 410 F.2d 995, 1000–1001 (1969); *Cooper v. Pate,* 382 F.2d 518, 521 (7th Cir. 1967). A prisoner retains those First Amendment rights not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correctional institution. *Pell v. Procunier,* 417 U.S.

817, 94 S.Ct. 2800, 41 L.Ed.2d 495, 501 (1974). While deference is accorded the expertise and discretionary authority of the correction officials, a regulation which is more restrictive than necessary to meet the institutional objectives or which does not serve the objectives advanced will be struck down. *Id.* at 826, 94 S.Ct. at 2806, 41 L.Ed.2d at 504; *Procunier v. Martinez,* 416 U.S. 396, 413, 420, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Moore v. Ciccone, supra* at 576.

## II

 The District Court found the wearing of long braided hair to be a tenet of the Indian religion sincerely held by Teterud. It further found that the interests of penal administration advanced by Warden Brewer could be served by viable, less restrictive means. The appellants challenge these findings as clearly erroneous. *See* Federal Rule of Civil Procedure 52(a); *Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

### A

They initially assert that the record does not support the District Court's finding that wearing long braided hair is a tenet of the Indian religion. They argue that the hair style is reflective of the purely secular considerations of racial pride and personal preference, unprotected by the Free Exercise Clause. *See Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). We disagree. The testimony of Professor Robert Thomas,[4] Professor Preston

---

**2.** The District Court's memorandum opinion and order for judgment is reported as *Teterud v. Gillman,* 385 F.Supp. 153 (S.D.Iowa 1974).

**3.** Teterud sought to maintain the cause as a class action on behalf of himself and all other Indian inmates at the Iowa State Penitentiary. The District Court denied class representation and limited relief to the named plaintiff. No appeal has been taken from that part of the order.

**4.** Professor Thomas, a social anthropologist at Wayne State University, Detroit, Michigan, stated:

\* \* \* Let's put it this way. All of life, I think, to the Cree people, and I think the older Cree would say that when God created the Cree he gave him long hair and that is, you know, that is as it should be. That's not something you have a reason for. You see, that is in the nature of the world that the Cree has long hair. Now, to not have long hair is unnatural for a Cree. So that for those Crees who I think are, you know, like the kind of put theirself into their religion, they will tend to grow their hair long.

Holder,[5] and Wallace Black Elk[6] supports the court's conclusion.

■ The appellants' argument appears to be premised on the theory that Teterud was required to prove that wearing long braided hair was an absolute tenet of the Indian religion practiced by all Indians.[7] This is not the law. Proof that the practice is deeply rooted in religious belief is sufficient. It is not the province of government officials or court to determine religious orthodoxy. *Fowler v. Rhode Island,* 345 U.S. 67, 70, 73 S.Ct. 526, 97 L.Ed. 828 (1953); *West Virginia State Bd. of Edu. v. Barnette,* 319 U.S. 624, 642, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); *Cantwell v. Connecticut,* 310 U.S. 296, 307, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Rowland v. Jones,* 452 F.2d 1005, 1006 (8th Cir. 1971) (per curiam).

\* \* \* The Fathers of the Constitution were not unaware of the varied and extreme views of religious sects, of the violence of disagreement among them, and of the lack of any one religious creed on which all men would agree. They fashioned a charter of government which envisaged the widest possible toleration of conflicting views. Man's relation to his God was made no concern of the state. He was granted the right to worship as he pleased and to answer to no man for the verity of his religious views. \* \* \* The First Amendment does not select any one group or any one type of religion for preferred treatment. It puts them all in that position. \* \* \*

*United States v. Ballard,* 322 U.S. 78, 87, 64 S.Ct. 882, 886, 88 L.Ed. 1148 (1944) (Citations omitted.).

While also a matter of tradition, the wearing of long hair for religious reasons is a practice protected from government regulation by the Free Exercise Clause. *See Wisconsin v. Yoder, supra,* 406 U.S. at 216, 92 S.Ct. 1526; *Welsh v. United States,* 398 U.S. 333, 343, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). We will not, at the insistence of the appellants, judge the orthodoxy of Teterud's beliefs.

**B**

They next assert that the District Court was clearly erroneous in finding that Teterud was sincere in his religious beliefs. Again, we disagree. *See United States v. Seeger,* 380 U.S. 163, 184, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). First, the sincerity of Teterud's belief was, on questioning from appellee's counsel, admitted by Warden Brewer. Second, when asked what it would mean to cut his hair, Teterud stated:

Q. Would you, for the record, describe what your hair length is today?
A. Just above my collar.
Q. So that if someone wants to continue with his religious beliefs as an Indian it is not necessarily dependent upon having long hair, is it?
A. Not dependent upon it, but it's you know, certainly—it's not quite Kosher.
Q. Well, if you don't—
A. If I might continue? I live in Detroit, Michigan, and if I do wear long hair they might drop a net over me, you know, or at least everybody would look at me and I'm not quite brave enough, to tell the truth, to grow long hair in Detroit, Michigan and put up with all the stares I would get.
 Now, I would feel better as a religious Indian if indeed I have long hair.
Q. But you can adjust to it, can't you?
A. Yes, with a little sense of betrayal, of a sense of self-betrayal—of a sense of self-betrayal, I might add.

---

**5.** Professor Holder, an anthropologist and former Chairman of the Anthropology Department of the University of Nebraska, stated:

> The closest I can come to it is that your body is a gift from nature. That is your link. It is your link with the world, with the universe.
>
> \* \* \* \* \* \*
>
> \* \* \* So the body has always been considered to be sacred. \* \* \*

**6.** Wallace Black Elk, an American Indian spiritual leader, stated:

> The hair, like I say, we wear it natural. Everything relates just the way the Great Spirit created me. The Spirit come and he talks to me. I talk to him.

**7.** On cross-examination of Professor Thomas, the state sought the reason why he, a Cherokee Indian, wore short hair.

I would feel spiritually just dead. I would feel empty. Mentally, it would be a tremendous strain. I would have to feel—I would feel it would be necessary that I felt that my whole individual being, my being was going to die.[8]

Third, the fact that Teterud was, prior to trial, an active leader in the Church of the New Song is not inconsistent with a sincere belief in the Indian religion, for the record shows that the former does not require conformity to certain beliefs. The Indian religion, unlike Christian religions, is not exclusive. Its followers can, without contradiction, participate in different religions simultaneously.

## C

■ Finally, the appellants assert that the encroachment on Teterud's right to exercise his religious beliefs is no greater than necessary to serve the interests of penal administration furthered by the regulation. They argued below that the absolute prohibition against wearing long hair was necessary for: (1) sanitary food preparation; (2) safe operation of machinery; (3) easy identification of inmates; (4) security against contraband; and (5) the personal cleanliness of inmates. The District Court held these justifications to be either without sub- stance or overly broad in their sweep. It found that: (1) the interests in sanitation and safety could be adequately served by requiring those with long hair to wear hair nets; (2) those inmates whose appearance changes by growing long hair could be rephotographed for easy identification; (3) any contraband secreted in the longer hair would be found by the normal body searches; and (4) there was no reason to believe an inmate could not keep long hair clean.[9]

■ The testimony of Warden Brewer, elicited by appellee's counsel, supports each of the District Court's findings.[10] Indeed, the only reason advanced in support of the regulation was the Warden's opinion, unsupported by empirical proof, that the hair net and reidentification requirements necessitated by allowing long hair would create a "hassle" between correction officers and inmates. The record does not show, however, that any increased administrative burden would be greater than that normally encountered when the constitutional rights of prisoners are enforced. Moreover, Warden Brewer testified by post-trial deposition, when an estimated twenty percent of the inmate population was in noncompliance with the regulation, that after five months of nonenforcement under the restraining order, no inmate problems had resulted from the wearing of long hair.[11] Justifications founded

---

8. The appellants' contention that the District Court erroneously shifted the burden of proof on them to show insincerity is frivolous. *See Remmers v. Brewer,* 494 F.2d 1277, 1278 (8th Cir.) (per curiam), *cert. denied,* 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974).

9. While not dispositive, the policy of other prisons is relevant in determining the need for a particular regulation. *Procunier v. Martinez,* 416 U.S. 396, 414 n. 14, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Federal Prison System Policy Statement 7300.64A, April 15, 1975, states in part:

4. *GENERAL POLICY.* Maximum and minimum lengths are not prescribed. * * * Long hair usually requires more attention than does shorter hair. Inmates are expected to keep hair clean and must avoid an unkempt or disheveled appearance. Those who choose to wear long hair must assume the additional responsibility for properly maintaining its cleanliness and appearance. 5. *LIMITATIONS.* Where long hair will result in increased likelihood of work injury, hair nets or caps will be worn. * * *

* * * * * *

Inmates who deal with food must be especially careful to keep their hair neat and clean. Furthermore, inmates with long hair who handle food may be required to wear hair nets or caps.

10. Robert Sarver, former Commissioner of Corrections in West Virginia and Arkansas, testified in agreement with Robert Raines, Warden of the Washington State Corrections Center, that the justifications offered in support of the regulation are "penological myth."

11. The record further revealed that the development of Teterud's sense of identity and self-respect, necessary for his rehabilitation, was

only on fear and apprehension are insufficient to overcome rights asserted under the First Amendment. *See Tinker v. Des Moines Community School Dist.,* 393 U.S. 503, 508–509, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Bishop v. Colaw,* 450 F.2d 1069, 1076 (8th Cir. 1971).

## III

■ While the power to act in conformity with one's religious beliefs is not absolute, the state's power to regulate that conduct " * * * must be so exercised as not, in attaining a permissible end, unduly * * * infringe the protected freedom." *Cantwell v. Connecticut, supra,* 310 U.S. at 304, 60 S.Ct. at 903. *Accord, Wisconsin v. Yoder, supra,* 406 U.S. at 219–220, 92 S.Ct. 1526. The appellants rely on *Proffitt v. Ciccone,* 506 F.2d 1020, 1021 (8th Cir. 1974), for the proposition that any infringement on Teterud's right to exercise his religious beliefs caused by the hair regulation is not unconstitutional under the First Amendment as a matter of law.[12] While there is language in *Proffitt* which might give rise to that reliance, we note

that the cases of this Circuit cited in support thereof, *Rinehart v. Brewer,* 491 F.2d 705 (8th Cir. 1974) (per curiam) and *Blake v. Pryse,* 444 F.2d 218 (8th Cir. 1971) (per curiam), did not involve First Amendment issues and are inapposite here.[13]

Further, we do not find *Brooks v. Wainwright,* 428 F.2d 652 (5th Cir. 1970) (per curiam), also cited in *Proffitt,* to be persuasive authority. While that case did involve First Amendment issues, it, like its predecessor *Brown v. Wainwright,*[14] 419 F.2d 1376 (5th Cir. 1970) (per curiam), was decided on the basis of the pleadings without a factual record.[15] The District Court in the instant case made detailed findings of fact and conclusions of law on the basis of a fully developed record.

The proof at trial established that the legitimate institutional needs of the penitentiary can be served by viable, less restrictive means which will not unduly burden the administrator's task. The challenged regulation, thus, impermissibly infringed on Teterud's right under

enhanced by his practice of the Indian religion. *See Rinehart v. Brewer,* 491 F.2d 705, 707 (8th Cir. 1974) (Lay, J., dissenting); *Barnett v. Rodgers,* 133 U.S.App.D.C. 296, 410 F.2d 995, 1002 (1969). *Cf., New Rider v. Board of Ed. of Sch. Dist. No. 1, Okl.,* 414 U.S. 1097, 94 S.Ct. 733, 38 L.Ed.2d 556 (1973) (Justices Douglas and Marshall dissenting from the denial of *certiorari*).

12. The Federal Prison System, contrary to its position in *Proffitt,* now recognizes that the regulation of hair length is not necessary for proper prison administration. *See* note 9, *supra.*

13. As stated by the Supreme Court in *West Virginia State Bd. of Edu. v. Barnette,* 319 U.S. 624, 639, 63 S.Ct. 1178, 1186 (1943):

In weighing arguments of the parties it is important to distinguish between the due process clause of the Fourteenth Amendment as an instrument for transmitting the principles of the First Amendment and those cases in which it is applied for its own sake. The test of legislation which collides with the Fourteenth Amendment, because it also collides with the principles of the First, is much more definite than the test when only the Fourteenth is involved. Much of the

vagueness of the due process clause disappears when the specific prohibitions of the First become its standard. The right of a State to regulate, for example, a public utility may well include, so far as the due process test is concerned, power to impose all of the restrictions which a legislature may have a "rational basis" for adopting. But freedoms of speech and of press, of assembly, and of worship may not be infringed on such slender grounds. They are susceptible of restriction only to prevent grave and immediate danger to interests which the state may lawfully protect. It is important to note that while it is the Fourteenth Amendment which bears directly upon the State it is the more specific limiting principles of the First Amendment that finally govern this case.

14. *Brown* was explicitly relied upon by the Court in *Brooks.* The *Brown* Court held only that " * * * the rule appears to be neither unreasonable nor arbitrary." *Brown v. Wainwright,* 419 F.2d 1376, 1377 (5th Cir. 1970) (per curiam).

15. The appellee's complaint was not conclusory but alleged facts justifying relief. The District Court correctly held an evidentiary hearing on the claims presented. *See Willis v. Ciccone,* 506 F.2d 1011, 1015 (8th Cir. 1974).

the First Amendment to the free exercise of his religion. *Pell v. Procunier, supra,* 417 U.S. at 826, 94 S.Ct. at 2806, 41 L.Ed.2d at 504; *Procunier v. Martinez, supra,* 416 U.S. at 420, 94 S.Ct. 1800. The decision and order of the District Court is

Affirmed.