**Gary D. CARPENTER et al., Appellants,**

v.

**STATE OF SOUTH DAKOTA et al., Appellees.**

**No. 75–1939.**

United States Court of Appeals, Eighth Circuit.

Submitted April 28, 1976.

Decided June 3, 1976.

Rehearing Denied Aug. 23, 1976.

---

John W. Gridley, III, Sioux Falls, S. D., filed brief, for appellants.

William J. Janklow, Atty. Gen., and Peter H. Lieberman, Asst. Atty. Gen., Pierre, S. D., for appellees.

Before LAY, STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

Three inmates of the South Dakota Penitentiary appeal from the district court's dismissal of their petition seeking damages and equitable relief.[1] Petitioners challenge the prison censorship board's ban on the receipt by prisoners of mail containing sexually explicit material.[2]

---

1. Although petitioners' pleading is styled "A petition for a writ of habeas corpus," it states a colorable claim under 42 U.S.C. § 1983. Viewed as such, the claims are not subject to the exhaustion doctrine. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

Petitioners may be entitled to equitable relief, but they have not alleged the bad faith necessary to overcome the immunity of the defendants from damages. Public officials are immune from damages under section 1983 where the alleged wrong arises out of official conduct done in good faith. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974);

*Sebastian v. United States*, 531 F.2d 900 (8th Cir., 1976). It is clear that the defendants acted pursuant to a district court order establishing censorship guidelines and state regulations adopted in accord with the court order.

2. The censorship board was comprised of three prison officials. Apparently, the procedures followed in this case were taken pursuant to a court order of January 29, 1975, directing the South Dakota Board of Charities and Corrections to adopt censorship policies in accordance with the following guidelines:

Penitentiary officials may not censor any publication or portion thereof unless it

The district court dismissed the petition as frivolous, without a hearing and without requiring a response from the defendants. The district court found:

> The application clearly shows that Plaintiffs were given written notice that certain mail items were being rejected. Petitioners were granted a hearing at which they were present and given an opportunity to be heard. The mail items were rejected on the basis that they constituted a danger to rehabilitation.

Petitioners assert that the district court erred in failing to grant them an evidentiary hearing on whether prison officials were justified in refusing to allow prisoners to receive these publications. We disagree.

Assuming these materials are not obscene, non-prisoners would clearly have a right to receive the publications. In *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), the Supreme Court observed:

> It is now well established that the Constitution protects the right to receive information and ideas. "This freedom (of speech and press) . . . necessarily protects the right to receive . . . ." *Martin v. City of Struthers*, 319 U.S. 141, 143, [63 S.Ct. 862, 87 L.Ed. 1313] (1943); see *Griswold v. Connecticut*, 381 U.S. 479, 482, [85 S.Ct. 1678, 14 L.Ed.2d 510] (1965); *Lamont v. Postmaster General*, 381 U.S. 301, 307–308, [85 S.Ct. 1493, 14 L.Ed.2d 398] (1965) (Brennan, J., concurring); cf. *Pierce v. Society of Sisters*, 268 U.S. 510, [45 S.Ct. 571, 69 L.Ed. 1070] (1925). This right to receive information and ideas, regardless of their social worth, see *Winters v. New York*, 333 U.S. 507, 510, [68 S.Ct. 665, 92 L.Ed. 840] (1948), is fundamental to our free society.

394 U.S. at 564, 89 S.Ct. at 1247, 22 L.Ed.2d at 549. It becomes necessary to determine whether petitioners' status as prisoners

mandates a different result under the First Amendment.

In *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), the Supreme Court stated:

> We start with the familiar proposition that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 [68 S.Ct. 1049, 92 L.Ed. 1356] (1948). See also *Cruz v. Beto*, 405 U.S. 319, 321, [92 S.Ct. 1079, 31 L.Ed.2d 263] (1972). In the First Amendment context a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.

417 U.S. 822, 94 S.Ct. 2804, 41 L.Ed.2d 501.

Consistent with this general rule, it has been held that a prisoner retains the right to read what he wants unless the state can show a countervailing interest warranting censorship. See *Burke v. Levi*, 391 F.Supp. 186, 190–91 (E.D.Va.1975); *Laaman v. Hancock*, 351 F.Supp. 1265, 1267–68 (D.N.H. 1972); *Sostre v. Otis*, 330 F.Supp. 941, 945 (S.D.N.Y.1971); *Rowland v. Sigler*, 327 F.Supp. 821, 824–25 (D.Neb.), *aff'd sub nom.*, *Rowland v. Jones*, 452 F.2d 1005 (8th Cir. 1971); *Seale v. Manson*, 326 F.Supp. 1375, 1382 (D.Conn.1971); *Payne v. Whitmore*, 325 F.Supp. 1191, 1193 (N.D.Cal. 1971); *Fortune Society v. McGinnis*, 319 F.Supp. 901, 904 (S.D.N.Y.1970).

In *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Supreme Court held that in order to justify censorship of prisoners' personal correspondence, two requirements must be met: (1) prison officials must show that "censorship furthers one or more of the substantial governmental interests of security, order,

---

presents a clear and present danger to security, order and rehabilitation. Notice of censorship or disapproval of any publication shall be given the inmate addressee, who may request a hearing for the purpose of

determining the existence of any foregoing governmental interests of security, order or rehabilitation.

Appellant's brief at 3.

and rehabilitation;" and (2) "the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." 416 U.S. at 413, 94 S.Ct. at 1811, 40 L.Ed.2d at 240.[3] A number of cases have expressly held that the *Martinez* standards should be applied to prison censorship of publications. *See Gaugh v. Schmidt,* 498 F.2d 10 (7th Cir. 1974); *Hopkins v. Collins,* 18 Crim.L.R. 2318 (D.Md., December 11, 1975); *Aikens v. Lash,* 390 F.Supp. 663 (N.D.Ind.), *modified on other grounds,* 514 F.2d 55 (7th Cir. 1975); *McCleary v. Kelly,* 376 F.Supp. 1186 (M.D. Pa.1974); *Gray v. Creamer,* 376 F.Supp. 675 (W.D.Pa.1974).

■ Assuming that the *Martinez* standards apply, censorship of the publications involved here is constitutionally permissible only if it furthers the prison's substantial interests in security, order, or rehabilitation, and no less restrictive means would suffice to protect the prison's interests. The prison officials have the burden of proving that censorship is warranted.

This does not mean, of course, that prison administrators may be required to show with certainty that adverse consequences would flow from the failure to censor a particular letter. Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty.

*Procunier v. Martinez, supra,* 416 U.S. at 414, 94 S.Ct. at 1811, 40 L.Ed.2d at 240.

Although the district court did not require a response from the defendants, we are satisfied that petitioners on the face of their complaint and documents attached thereto demonstrated that further proceedings were not required and that the district court was justified in dismissing their complaint. For example, exhibit I, a summary of the board's action attached to the complaint, stated that upon petitioner Bagley's request a hearing was held on April 16, 1975, by the prison board at which Bagley agreed that one of the catalogues, entitled "Marital Aids for Lovers," sent to him by a California mail order house could be withheld. He insisted, however, that he was entitled to receive "The Complete Adult Mail Order Catalogue." The board described the catalogue as containing "pictures of couples in various sexual poses and advertisements for: Lotions for Love, Potions for Power, Jells for Joy, Turn on Mags., Lesbian Lovers, Bondage, Girl Spankings, Lesbian Lovers, Filthy Party Records."

The board's decision was stated thereon as follows:

The board agrees with the rejection of the material "Aids for Lovers" and the Complete Adult Mail Order Catalogue on the grounds that the material would be detrimental to rehabilitation.

The materials would tend to make inmates more unsettled in their surroundings and less capable of availing themselves to the rehabilitation programs. The hearing board could see no literary, educational or moral value in the material.

Similarly, exhibit II to petitioners' petition summarizes the hearing on May 1, 1975, and rejection by the board of other materials requested by petitioner Bagley of a similar nature. The board stated:

The board agrees with the rejection of the materials. It is felt that the materials would lead to abnormal arousal and tend to lead to deviate sexual behavior on the part of some inmates.

Exhibits 3 and IV pertain to the hearing and the board's rejection of materials requested by petitioners Carpenter and Loy. Again the board rejected the material requested in 3 for the reasons:

1—They are primarily for prurient reasons.

2—The primary purpose of these books is for sexual arousal.

---

3. *Martinez* turned upon the First Amendment rights of persons who correspond with prisoners, not the rights of the prisoners themselves.

3—The literary value of these books is questionable.

The board rejected the material in IV upon the grounds that:

1—The text is primarily a Buddhist sex manual.

2—Many of the pictures constitute pornography and are prurient.

3—If the book were released to the inmate, it would not remain in the private library of the inmate.

Petitioners do not quarrel with the board's description of the disputed material. The thrust of their complaint is the material does not present a clear and present danger to the penal institution or its security, order and rehabilitation.

 It is well settled that pro se complaints should be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Although courts are reluctant to interfere with prison administration, regulations and discipline, allegations of First Amendment deprivation must be scrutinized carefully. Generally they are sufficient to call for the offering of supporting evidence. *Brown v. Hartness*, 485 F.2d 238 (8th Cir. 1973).

 Here we are satisfied that the face of the petition including petitioners' own exhibits demonstrates the court was warranted in dismissing the petition without requiring further response by the board or the conduct of further hearings.

The decision of the board that receipt of the items described in this case would have a detrimental effect upon rehabilitation was well within the discretion of the board and requires no further review by the courts.[4]

Affirmed.

LAY, Circuit Judge (dissenting).

I respectfully dissent.

This case, involving First Amendment rights of state prisoners, was dismissed by the district court without requiring a responsive pleading from prison authorities. Unless the prisoners' *pro se* pleading can be deemed frivolous, the district court's summary dismissal is contrary to the principle of *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652, 653 (1972), and the prior mandated policy of this court. *See Brown v. Hartness*, 485 F.2d 238 (8th Cir. 1973); *Jones v. Lockhart*, 484 F.2d 1192, 1193 (8th Cir. 1973). In *Brown* we stated:

> [W]e think that allegations smacking of First Amendment deprivation are sufficient to call for the offering of supporting evidence.

485 F.2d at 239.

The pleadings demonstrate that the prisoners' claim is far from frivolous. The majority opinion recognizes that "[a]ssuming these materials are not obscene, non-prisoners would clearly have a right to receive the publications," under *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Slip Op. p. 761. Thus, the only possible rationale for banning a prisoner from reading this material on this record is the prison officials' conclusory allegation that the material would be detrimental to rehabilitation. At the very least the complaint places this question in issue, so the district court's summary dismissal can only be sustained if federal courts are bound by the judgment of prison officials. The majority's decision that the federal courts are so bound is a retreat to the archaic "hands off" doctrine and the abandoned idea that prisoners' constitutional rights deserve little or no protection from arbitrary action of prison officials. Equally significant, however, is the callous disregard of the First Amendment rights of all individuals to receive information and ideas.

It is not a sufficient justification for prior restraint that these publications relate to sexual matters. In *Roth v. United States*, 354 U.S. 476, 487, 77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498, 1508 (1957), the Supreme

---

4. Compare regulations developed by the California Department of Corrections and approved by the district court after the latter held the original regulations unconstitutional. *Procunier v. Martinez, supra*, 416 U.S. at 416 n.15, 94 S.Ct. at 1812, 40 L.Ed.2d at 241.

Court observed that "sex and obscenity are not synonymous." Unless the material is legally obscene, which can be determined only by the court after viewing the material,[1] no rule allows a court to take judicial notice that such material is, as a matter of law, inimical to rehabilitation. Yet this is the effect of our holding today.

I agree that courts should show deference to the expertise and judgment of prison officials in the administration of prison affairs. Nevertheless, I had assumed that when basic constitutional rights were involved, it was settled law that courts would not abdicate their responsibility to investigate, upon complaint, whether those rights were being violated. *See Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Teterud v. Burns*, 522 F.2d 357 (8th Cir. 1975).

Prison officials should be required to demonstrate by substantial evidence that the challenged material will have a detrimental effect upon rehabilitation efforts. I cannot accept their naked assertion that it does. Such unsupported acceptance is in derogation of the Supreme Court's holding in *Martinez* that First Amendment rights are not dependent upon the personal prejudices of prison officials. Similarly, the decision is contrary to *Teterud v. Burns*, 522 F.2d 357 (8th Cir. 1975), where this court invalidated a prison rule against long hair. We held that prison officials had not supported by evidence their contention that long hair was detrimental to security and thus that the rule must yield to the First Amendment freedom of religion of Indian prisoners.

In *Procunier v. Martinez*, 416 U.S. 396, 413–14, 94 S.Ct. at 1811, 40 L.Ed.2d at 240 (1974) the Supreme Court suggests that before a prisoner's First Amendment rights may be circumscribed, it is the duty of prison officials to demonstrate that no less restrictive means will safeguard legitimate institutional interests. Illustrative in the present case is a reason given by the prison

board for rejecting the material: "If the book were released to the inmate, it would not remain in the private library of the inmate." There is no showing that no less restrictive means could protect the legitimate needs of prison administration. If it could be shown that this material would indeed have an adverse effect upon prisoners other than the addressee, then prison officials could order confiscation if and when the addressee attempted to circulate it to the others. Another alternative might be to require the book to be used only in the prison library. Other similar measures might be feasible.

In *Rinehart v. Brewer*, 491 F.2d 705 (8th Cir. 1974), I observed:

If these men, who have obviously found it difficult to live within society's mores, are ever to enjoy life within the law they must learn self control and discipline in an atmosphere where self respect is maintained and the human personality allowed to flourish. This cannot be achieved while the state pursues a policy which requires conformity beyond need.

491 F.2d at 707 (dissenting opinion).

This observation is apropos here, where we accept circumvention of First Amendment rights based on conclusory assertions of need.

If the material is obscene, it can of course be banned from circulation. However, this decision is one for the court, not the prison officials. No decision holds that nonobscene publications may be subject to prior restraint by prison officials without meeting the standards imposed by *Martinez*. In fact all decided cases reach a contrary result. *See Gaugh v. Schmidt*, 498 F.2d 10 (7th Cir. 1974); *Hopkins v. Collins*, 411 F.Supp. 831, 18 Crim.L.R. 2318 (D.Md.1975); *Aikens v. Lash*, 390 F.Supp. 663 (N.D.Ind.), *modified on other grounds*, 514 F.2d 55 (7th Cir. 1975), *petition for cert. filed*, 44 U.S. L.W. 3122 (U.S. Sept. 9, 1975) (No. 75–35); *McCleary v. Kelly*, 376 F.Supp. 1186 (M.D. Pa.1974); *Gray v. Creamer*, 376 F.Supp. 675 (W.D.Pa.1974).

---

1. "A reviewing court must, of necessity, look at the context of the material, as well as its con-

tent." *Kois v. Wisconsin*, 408 U.S. 229, 231, 92 S.Ct. 2245, 2246, 33 L.Ed.2d 312, 315 (1972).

I would reverse and remand for an inquiry into the bases of the prison censorship board's judgment that the challenged material is detrimental to rehabilitation efforts and that total censorship is the least restrictive means of alleviating the problem.