Mariano J. HUNTER, Plaintiff,

v.

Ted KOEHLER and Tom C.
Laitinen, Defendants.

No. M83–329 CA.

United States District Court,
W.D. Michigan, N.D.

Sept. 12, 1984.

Mariano J. Hunter, pro per.

Edgar L. Church, Jr. & Louis J. Porter,
Asst. Attys. Gen., Lansing, Mich., for de-
fendants.

OPINION

HILLMAN, District Judge.

This is a civil rights action filed pursuant
to 42 U.S.C. § 1983 by an inmate at the
Marquette Branch Prison against the ward-
en, a counselor, and "mailroom personnel"
at the prison.

In a somewhat rambling and confusing
complaint and amended complaint, plaintiff
alleges that the prison mailroom rejected a
catalog entitled "Fantasy Images" and cer-
tain snapshots of nudes without an admin-
istrative hearing.[1] He also alleges that the
prison at Jackson has a more liberal policy
than the prison at Marquette regarding the
receipt of such material. He seeks declara-
tory and injunctive relief for this alleged
violation of his constitutional rights under
the First and Fourteenth Amendments.

The defendants have filed an alternate
motion to dismiss and for summary judg-
ment. The motions are supported by a
copy of the applicable policy directive re-
garding the prison mail policy, and copies
of various records regarding an administra-
tive hearing held with respect to the rejec-
tion of the materials here in question.
None of these supporting documents (Ex-
hibits A through H) have been controvert-
ed.

It is noted at the outset that plaintiff's
allegation that he had been denied an ad-
ministrative hearing after having request-
ed one is both misleading and deceptive.
The pertinent facts as evidenced by the
uncontroverted documents are as follows:

1. On October 3, 1983, the warden
wrote to the plaintiff with respect to the
catalog as follows:

You have received a catalog entitled
*Fantasy Images.* Unfortunately, this
catalog seems to violate policy because it
contains photographs of homosexual ac-
tivity and acts of gross indecency. I
intend to recommend that it be placed on
the restricted publication list. However,
you will have until 10/11/83 to submit

1. The complaint refers to various exhibits, only
some of which are attached to the complaint. A

copy of the catalog and two of the snapshots are
contained in pleading # 4.

your reasons why this action should not be taken (Exhibit A).

2. Certain nude snapshots mailed to plaintiff were also rejected on the ground that prisoners are not allowed access to nude snapshots taken with home-type cameras as specified in the Prisoner's Guide Book (Exhibits D and E).

3. On October 3, 1983, plaintiff wrote to the Warden and requested a hearing with respect to the rejected material (Exhibit B).

4. However, by October 7, 1983, plaintiff had changed his mind. He wrote to the Warden on that date as follows:

In the Matter of the Restricted Publication topic My letter of 10/3/1983 discussed, I would respectfully request the matter to remain at what-ever descretionary opinions you may have.

I do not wish to try to change whatever policies you have set for the institution, as I like it here, and however restrictive some of the Policies may seem in comparison to Jackson's. I do realize that Men, circumstances and other considerations I may not presently be aware of. Have, persuaded your thoughts, in setting policy according to the Institution.

I would however, wish an Administrative Meeting with you in regards to the catalog. If only to express lightly my apologies for taking rather abrupt offense to denial of receiving the catalog.

\* \* \* \* \* \*

Generally, with all the better things I now appreciate, I am not going to bring a Frivolous Matter into a Federal Case. Please consider the Matter Closed and Finished .. I Would still appreciate a brief meeting with you, to express personally my apology.

You have done a good job here, and considering the type of men that you must deal with inside the walls. I now see reason for your restricting certain literature.

\* \* \* \* \* \*

As for myself, I haven't that long to go, so am not interested in applying my time to something so trivial. (Exhibit C)

5. On December 5, 1983, plaintiff filed the present action, claiming, among other things, that his rights were violated because he had not been given an administrative hearing.

6. On February 6, 1984, the Hearing Administrator for the Michigan Department of Corrections wrote to the plaintiff as follows:

You have recently filed a lawsuit against the Department of Corrections regarding the rejection by the institution of certain nude photographs and a catalog that is apparently entitled "Fantasy Images." In that lawsuit, you allege, among other things, that you were not given hearings, as required by policy, on the rejection of these items. Although it was indicated in your correspondence with the institution at the time these items were rejected that you did not want a hearing, if you have changed your mind on that point and wish to have a hearing as to whether or not these rejections were proper, the Department is prepared to offer you a hearing at this time.

The hearing will be conducted to determine whether or not it was appropriate under policy for the nude photographs which you received to be rejected, under the provision on page 12(a) of the Prisoner Guidebook which states that prisoners will not be allowed to have "nude snapshots taken with home-type cameras." The hearing will also decide whether or not the "Fantasy Images" catalog was appropriately rejected under Department policy directive PD–BCF–63.03, which states that prisoners are not allowed to have published material which shows acts of homosexuality, sadism, violent sexual practices or unlawful sexual behavior.

Please let me know immediately if you would like to have a hearing on the rejection of these items. If so, I will contact the institution to have them set up the hearing. (Exhibit G).

7. On February 14, 1984, plaintiff wrote to the Hearing Administrator to request a hearing (Exhibit H).

8. On March 7, 1984, plaintiff was served with a Notice of Intent to Conduct an Administrative Hearing, which advised him of the purpose of the hearing as follows:

The institution has received an illustrated catalog of pornographic films and other materials entitled "Fantasy Images," which is addressed to you. You are not allowed to have this catalog in your possession as it violates PD–BCF–63.03, in that the illustrations show acts of homosexuality and unlawful sexual behavior. In addition, you have been sent nude photographs from Jackson Photo Center, as indicated on the attached Notices of Package Rejection, which you are not allowed to receive, as they are contraband. It is stated on page 12a of the Prisoner Guidebook that prisoners are not permitted to possess nude photographs taken with home-type camera. The intent of this prohibition is to prevent prisoners from receiving nude photographs of wives or girlfriends, as such photos could cause serious disruption between prisoners if they are seen by someone other than the prisoner to whom they were sent. Thus, only nude photos which have been published for commercial use are allowed. As the photos which were sent to you are not of a commercial nature, you will not be allowed to receive them. (Pleading # 14).

9. The administrative hearing was held on April 19, 1984. The Hearing Report states:

RESIDENT'S STATEMENT:

Resident Hunter was seen on 4–19–84 and stated that he already has the photos and that they are threatening to take them away from him. Resident presented the photo's at the hearing along with a copy of the above mentioned catalog that he already had.

DISPOSITION:

The catalogs from Fantasy Images as shown by the resident does show acts of homosexuality on the last page and is excluded under policy PD–BCF–63.03. It is noted that the resident already has one copy of the catalog and that this finding pertains only to the catalog in the mail room that has not yet been given to the resident.

As to the photos the resident already has them and there is no possibility of rejecting them at this time. If the institution wishes to conviscate(sic) them they need to do so with a new notice of intent. (Pleading # 14).

Plaintiff's complaint, in essence, is an attack on the validity of the Michigan Department of Corrections Policy Directive PD–BCF–63.03, "Prisoner Mail Policy," dated June 6, 1983, and its application to a catalog depicting acts of homosexuality and to certain snapshots of nudes taken with a home-type camera. The policy directive provides in pertinent part:

Whenever a first class letter or a package addressed to a prisoner is believed to be in violation of institutional mail rules, the prisoner will be advised as to the reason the item will not be delivered. The prisoner may request an administrative hearing to be held according to procedures set forth in Administrative Rule 791.3310, and may appeal nonacceptance of the item through the established prisoner grievance procedure. Institutions shall attempt to retain disputed items for a reasonable period to allow the prisoner to pursue administrative appeal processes.

Prisoners shall not be given access to the following items and publications which are considered disruptive to institutional order and/or security:

* * * * * *

(3) material describing or showing acts of homosexuality, sadism, violent sexual practices and/or unlawful sexual behavior.

The policy with respect to nude snapshots is set forth in page 12a of the Prisoner Guidebook, which states:

Prisoners shall be permitted access to all books, periodicals and other publications except the following:

* * * * * *

10. Nude snapshots taken with home-type cameras.[2]

In *Carpenter v. State of South Dakota*, 536 F.2d 759 (8th Cir.1976), *cert. den.*, 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246 (1977), the court, in a case markedly similar to the present one, upheld a prison censorship board's ban on the receipt of mail containing sexually explicit material. The court stated:

Three inmates of the South Dakota Penitentiary appeal from the district court's dismissal of their petition seeking damages and equitable relief. Petitioners challenge the prison censorship board's ban on the receipt by prisoners of mail containing sexually explicit material.

The district court dismissed the petition as frivolous, without a hearing and without requiring a response from the defendants. The district court found:

The application clearly shows that Plaintiffs were given written notice that certain mail items were being rejected. Petitioners were granted a hearing at which they were present and given an opportunity to be heard. The mail items were rejected on the basis that they constituted a danger to rehabilitation.

Petitioners assert that the district court erred in failing to grant them an evidentiary hearing on whether prison officials were justified in refusing to allow prisoners to receive these publications. We disagree.

536 F.2d at 760–761.

Here we are satisfied that the face of the petition including petitioners' own exhibits demonstrates the court was warranted in dismissing the petition without requiring further response by the board or the conduct of further hearings.

The decision of the board that receipt of the items described in this case would have a detrimental effect upon rehabilitation was well within the discretion of the

board and requires no further review by the courts.

536 F.2d at 763.

In *Guajardo v. Estelle*, 580 F.2d 748 (5th Cir.1978), the court held that the right of prison officials to ban sexually explicit material is not limited to that which has been judicially declared obscene. The court specifically held that it could ban homosexual material, provided that the prisoner is given notification of the refusal and be allowed to appeal that decision through proper administrative channels. This is precisely what the Michigan policy directive provides here and precisely the procedure followed here. In approving the ban on homosexual material, the court in *Guajardo* stated:

Thus for inmates stimulated by sexually explicit material the temptation to further criminal behavior looms large. We think it clear that a legitimate rehabilitation interest of prison authorities is involved in preventing homosexual acts. We are not willing to condone the introduction of material into the prison that would exacerbate the situation.

580 F.2d at 762.

The reason behind the policy of forbidding nude snapshots taken with home-type cameras and allowing only photographs of nudes which have been published for commercial use was explained, as indicated above, in the notice to the plaintiff regarding the administrative hearing:

The intent of this prohibition is to prevent prisoners from receiving nude photographs of wives or girlfriends, as such photos could cause serious disruption between prisoners if they are seen by someone other than the prisoner to whom they were sent. Thus, only nude photos which have been published for commercial use are allowed. As the photos which were sent to you are not of a commercial nature, you will not be allowed to receive them (Pleading # 14).

In *Trapnell v. Riggsby*, 622 F.2d 290 (7th Cir.1980), the court specifically approved

---

**2.** A copy of the policy directive and of page 12a of the Prisoner's Guidebook is attached to the

defendants' motion for summary judgment and supporting brief.

such a policy, holding that a prison regulation prohibiting inmates from possessing or receiving photographs of nude or seminude women unless the photographs had been published for commercial use was constitutionally valid. The court stated:

> Rather than attempt to suppress expression *per se*, the regulation is an attempt to diminish the possibility that, when certain photos are in the possession of inmates, those photos will be the cause of violence between the inmates. We note that each of the photographs that Trapnell ordered from Gowland was selected from Gowland's catalogues, which catalogues Trapnell was allowed to receive through the prison mail system.
>
> Finally, the regulation is sufficiently narrow in scope and is "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 U.S. [396] at 413, 94 S.Ct. [1800] at 1811 [40 L.Ed.2d 224 (1974)]. Under these regulations prison officials are not entitled "to apply their own personal prejudices and opinions as standards for prisoner mail censorship." *Id.* at 415, 94 S.Ct. at 1812. Instead, these regulations are a narrowly drawn and carefully limited response to a valid security problem faced by officials. *The distinction between photographs which have been released for commercial distribution and those photos which have not been so released is a reasonable attempt to exclude photographs of women with whom inmates have an emotional attachment.* (Emphasis supplied).

622 F.2d at 293.

The court concludes that the prison policy which plaintiff challenges here is constitutionally valid as a proper and reasonable response to legitimate prison concerns involving both security and rehabilitation interests. It provides for giving the prisoner a Notice of Package Rejection form whenever mail is rejected. The form notifies the prisoner of the rejection and the reasons for the rejection. The form also affords the prisoner an opportunity for an administrative hearing to challenge the rejection. He simply has to check a box so indicating. This policy was strictly followed in this case. Not only did the plaintiff not request a hearing on the form, but when later offered the opportunity for a hearing, he initially requested it and then four days later advised the warden that he did not want a hearing for such a "Frivolous Matter" and for "something so trivial." He also told the warden that "I now see reason for your restricting certain literature." (Exhibit C). In any event, when he again changed his mind, he was afforded an administrative hearing in accordance with the policy directive.

Plaintiff alleges that the mailroom personnel are not qualified to distinguish between photographs taken by a commercial photographer and those taken by a home-type camera. Assuming this doubtful premise is true, this is a matter which can be raised and determined at the administrative hearing to which the inmate is entitled, and raised again in the appellate process as provided in the policy directive.[3]

Plaintiff also alleges that the prison at Jackson has a more liberal mail policy regarding the type of material here involved. Again, assuming this is true, plaintiff himself recognized that this may be attributable to a number of valid reasons as, for example, the difference in the institutions and the custody classification of the inmates in each institution. Thus, in his letter to the warden on October 7, 1983, stating that he did not wish an administrative hearing, he said:

> I do not wish to try to change whatever policies you have set for the institution, as I like it here, and however restrictive some of the Policies may seem in comparison to Jackson's. I do realize that Men, circumstances and other considerations I may not presently be aware of. Have,

---

3. Plaintiff alleges that mailroom personnel do not have the expertise to determine whether a photo has been taken by a "box-type" camera.

Here again, he distorts the facts. The regulation refers to "home-type camera," not "box-type" camera.

pursuaded your thoughts, in setting policy according to the Institution (Exhibit C).[4]

Moreover, if the mail policy at the Jackson prison is more liberal, the inmate can bring this out at his administrative hearing in support of his challenge to the rejection of the mailed material.

For the reasons stated above, the defendants' motion for summary judgment is granted, and the complaint as amended is dismissed.

---

**4.** For example, the prison at Marquette is a maximum custody institution, while the prison at Jackson is a close or medium custody institution.