Martin SOSTRE, Plaintiff-Appellant,

v.

Peter PREISER, Commissioner of New York State Department of Correctional Services, et al., Defendants-Appellees.

No. 985, Docket 75–2036.

United States Court of Appeals, Second Circuit.

Argued April 4, 1975.

Decided June 19, 1975.

Michael E. Deutsch, Dennis Cunningham, Buffalo, N. Y., for plaintiff-appellant.

Timothy F. O'Brien, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Jack W. Hoffman, Asst. Atty. Gen., of counsel), for defendants-appellees.

Before ANDERSON, MANSFIELD and OAKES, Circuit Judges.

OAKES, Circuit Judge:·

Appellant seeks to overturn the denial of a preliminary injunction by the United States District Court for the Northern District of New York, Edmund Port, *Judge*, in a civil rights action, seeking declaratory, injunctive and monetary relief. Appellees include the New York Commissioner of Corrections and the wardens of Auburn and Clinton prisons.[1] Appellant has during most of the pendency of this appeal been confined at the Jefferson County Jail at Watertown, New York, by virtue of a stay entered by Judge Port and extended by this court, and is now confined at the federal detention center at West Street, New York City, by court order.

█ Appellant seeks to raise three issues on this appeal: (1) whether it was error to refuse to enjoin preliminarily a "no-beard" prison rule as applied to him (a bald-headed 52-year-old man with a ¼″ thin beard and moustache); (2) whether it was error to refuse to enjoin preliminarily confinement in punitive segregation which had occurred for approxi-

---

1. Appellant is the same Martin Sostre whose *indefinite solitary confinement was terminated* in *Sostre* v. *Rockefeller*, 312 F.Supp. 863 (S.D. N.Y.1970), *aff'd in part, rev'd in part sub nom., Sostre* v. *McGinnis*, 442 F.2d 178 (2d Cir. 1971) (en banc). His 1968 state court convic- tion for the sale and possession of narcotics, assault and contempt of court was recently upheld against federal habeas attack. *United States ex rel. Sostre* v. *Festa*, 513 F.2d 1313 (2d Cir. 1975).

mately 17 months[2] for his refusal to comply with the "no-beard" rule; and (3) whether enforcement of a "rectal search" rule against him in segregation should have been preliminarily enjoined. We cannot pass upon these claims, however, and must reverse and remand since it nowhere appears in the record precisely what the "no-beard" and "rectal search" rules, if they are such, require. We do not know and counsel could not advise us whether these rules are limited to a given prison or state-wide in application; we do not know their language or how they apply. The "no-beard" rule is justified to us by the State on grounds of hygiene and necessity for identification purposes. But if, as counsel for the State indicated on oral argument, the same rule permits hair on the top of the head two inches in length and moustaches of any length, the hygiene hazards of a bald-headed man with a ¼" beard seem so minimal as to be infinitesimal. And while a beard grown in prison might cover up prominent features so as to make it more difficult for the authorities to identify a given inmate, that apparently is not the case with Sostre, who had a quarter-inch beard when he was arrested; as he said in a Superintendent's Proceeding at Auburn, his beard "was in fact my identification."

Again, in respect to the rectal search rule, it is justified to us as necessary to prevent the intra-prison transfer of contraband. But it apparently has been applied to Sostre even though he has been segregated from other inmates, and so far as appears is therefore less likely to have contraband than other inmates. Rather than submit to a rectal search on going to or from the yard or on both, Sostre has chosen to forego the hour or

so a day of "recreation" allowed to inmates in solitary. On the record before us we do not know if segregated inmates are subjected to the indignities of a rectal search on specific occasions or under circumstances different from those when other inmates are subjected thereto or if the latter are ever subjected to rectal searches. If regular and frequent rectal searches are designed as a form of punishment for inmates in segregation and not genuinely related to internal prison security, the constitutional implications are obviously different.

■ There was a time, of course, when prison inmates had no rights. *Ruffin* v. *Commonwealth*, 62 Va. (21 Gratt.) 790, 796 (1871) (prison inmate characterized as "a slave of the state"). That time is past. Limitations on fundamental rights such as we are here concerned with must be supported by the legitimate and reasonable "needs and exigencies of the institutional environment." *Wolff* v. *McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 4, L.Ed.2d 935 (1974); *Pell* v. *Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).[3] But even if the institutional purpose is legitimate and substantial, "that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton* v. *Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). *See also Procunier* v. *Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). *Cf.* Note, Less Drastic Means and the First Amendment, 78 Yale L.J. 464 (1969). Finally, the punishment for violation of a legitimate rule rationally applied may not be disproportionate to the offense. *Adams* v. *Carlson*, 488 F.2d 619, 636 (7th Cir. 1973).

---

2. Appellant's period of punitive segregation commenced in December of 1972, when he was transferred from the Auburn prison to the Clinton facility, and continued to May 19, 1973, at which time Sostre was removed from segregation on a federal writ to testify at a trial in the Western District of New York. He was returned to Clinton prison on June 5, 1973. Except for a period from December 18, 1973, until September 4, 1974, during which

time he was testifying in the United States District Court for the Southern District of New York, he has remained in segregation at Clinton from June 1973 until the issuance of the stay in this suit by Judge Port.

3. *Cf. Dwen* v. *Barry*, 483 F.2d 1126 (2d Cir. 1973), *cert. granted*, 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (U.S. May 27, 1975).

We remand to the district court for the development of a record which includes, *inter alia*, the specific language of the rules or regulations in question, the authority for their promulgation, the pattern of their application, and more substantial evidence on the hygiene, security, contraband and identification issues than we have before us. In order to preserve the status quo until this case is finally resolved we believe that the district court would not be amiss were it to continue the stay order now in effect.

Judgment reversed and remanded for findings in accordance with the opinion.