John **MAGUIRE**

v.

George C. **WILKINSON**, Warden, Federal Correctional Institution, Danbury, Connecticut.

Civ. No. B–75–338.

United States District Court,
D. Connecticut.

Nov. 21, 1975.

Motion to Vacate Denied Dec. 19, 1975.

Judith M. Mears, Stephen Wizner, Fred Zacharias, Law Student Intern, New Haven, Conn., for petitioner.

Kenneth R. Davis, Asst. U. S. Atty., Bridgeport, Conn., for respondent.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

Petitioner, presently incarcerated at the Federal Correctional Institution, Danbury, has been placed in administrative segregation for his refusal to shave his beard. His claim is that he is being punished for a religious belief that requires him not to shave, and is therefore being denied his first amendment right to free exercise of religion as well as his fifth amendment right to equal protection of the law. He seeks to be returned to general population, to have his forfeited good time restored to him, and to have a hearing before the Board of Parole to determine his eligibility for release to a community treatment center.

On May 17, 1973, Maguire was sentenced to a term of fifteen months' imprisonment, a term which he began to serve on May 29, 1973. Shortly thereafter he escaped from federal custody. He was subsequently recaptured and sentenced to a consecutive term of a year and a day for the escape. In November, 1974, petitioner took the "Vow of the Nazarite." This vow, he alleges, prohibits its adherents, among other things, from shaving the hair of the head. Upon his transfer to the Danbury Federal Correctional Institution petitioner was placed in administrative segregation for his refusal to shave his beard in violation of Bureau of Prisons Policy 7300.-64(2). After spending several weeks in segregation Maguire shaved his beard and was returned to general population. Petitioner claims that soon thereafter he began to experience pangs of guilt stemming from his having allowed a "razor [to] come upon his head." Old Testament, Numbers, Chap. 6, v. 5. He stopped shaving and by May, 1975, when his beard was again visible, his refusal to shave resulted in his being again placed in administrative segregation, where he presently remains.

■ Bureau of Prisons Policy Statement 7300.64A(6) (April 15, 1975) provides as follows:

Beards are *not* permitted, since they most readily compromise security because of the consequent rapid modification of appearance.

On those occasions where it has been demonstrated that religious beliefs proscribe shaving of beards, and the inmate had the beard upon commitment, special allowances should be made. (emphasis in original)

Petitioner filed an administrative complaint with the Warden at Danbury, challenging the application of the regulation to him. His request that he be permitted to wear his beard because of his religious belief was denied, as was a subsequent appeal to the Regional Director. An appeal filed with the Director of the Bureau of Prisons on September 29, 1975, has elicited no response and therefore must be deemed to have been denied. Bureau of Prisons Policy Statement 2001.64(6). Thus petitioner has exhausted his administrative remedies, and this Court has jurisdiction of his complaint pursuant to 28 U.S.C. § 2241. *Kochie v. Norton*, 343 F.Supp. 956 (D. Conn.1972).

The government has stipulated that the petitioner was sincerely motivated by religious reasons in growing his beard and that he has been confined in segregation solely because of his refusal to shave.

■■ Freedom to practice one's religion is one of the most cherished values articulated in the United States Constitution. *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). When an individual is forced by threat of state-imposed sanction to perform acts "undeniably at odds with fundamental tenets of [his] religious beliefs," the free exercise of religion is seriously at issue. *Wisconsin v. Yoder*, 406 U.S. 205, 218, 92 S.Ct. 1526, 1534, 32 L.Ed.2d 15 (1972). The government may regulate the religiously-based activities of individuals when there is a substantial governmental interest in limiting a class of activities that threaten the public health, safety, or welfare.

*Braunfield v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961). However, even as to laws that are neutral on their face and have legitimate secular aims, "the Free Exercise Clause may condemn certain applications clashing with imperatives of religion and conscience, when the burden on First Amendment values is not justifiable in terms of the Government's valid aims." *Gillette v. United States*, 401 U.S. 437, 462, 91 S.Ct. 828, 842, 28 L.Ed.2d 168 (1971).

■ Prison life necessitates the limitation of many freedoms enjoyed by persons who have not been convicted of crimes. *Sostre v. McGinnis*, 334 F.2d 906, 908 (2d Cir. 1964). Nevertheless "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); see *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

The Bureau of Prisons Policy 7300.-64A(6) recognizes that an inmate should be allowed to wear a beard if he is prompted to do so by a sincere religious belief. There is no occasion in this case to consider whether such a regulation is constitutionally required. The only issue here is whether the Bureau of Prisons, having permitted prisoners to wear beards out of religious conviction, can extend this right to those who had beards at the start of incarceration and deny the right to those who grow beards while in prison. *Cf. Seale v. Manson*, 326 F.Supp. 1375, 1380–81 (D.Conn. 1971). This issue can be analyzed in terms of the due process prohibition against irrebuttable fact presumptions, see *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), or the equal protection standard of the fifth amendment, see *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

In extending to prisoners a right to wear beards out of religious conviction, the government is clearly entitled to make inquiry as to the sincerity of the religious belief held by a prisoner who seeks entitlement to the available right. *Cf. Wisconsin v. Yoder, supra*, 406 U.S. at 215–16, 92 S.Ct. 1526. Here, however, the regulation has foreclosed all inquiry as to the sincerity of the religious beliefs of those, like petitioner, who claim to have acquired, after incarceration, a religious belief that requires wearing a beard. In effect, the regulation has conclusively presumed that the claimed religious beliefs of all such prisoners are spurious. No doubt the Bureau of Prisons is entitled, in making a factual determination as to the sincerity of a religious belief, to give some weight to the fact that the claimed religious belief was not held prior to incarceration and was espoused somewhat precipitously. These circumstances merit consideration, but they cannot automatically lead to the conclusion that the religious belief is not genuine.

The situation is even more favorable to the petitioner than the circumstances confronting those who sought to establish conscientious objector exemption to the draft on the basis of religious belief acquired after receipt of a 1–A classification or even an induction order. The Selective Service System and the armed services were forbidden to presume conclusively that beliefs alleged to have been acquired in such circumstances were not genuine. *Clay v. United States*, 403 U.S. 698, 702–03, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971); *United States ex rel. Stein v. Gillen*, 463 F.2d 533, 534–35 (7th Cir. 1972). The lateness of the acquisition of the beliefs was only a circumstance to be considered in determining sincerity. *Smith v. Laird*, 486 F.2d 307, 311 (10th Cir. 1973); *Tressan v. Laird*, 454 F.2d 761, 762–63 n. 1 (9th Cir. 1972). The petitioner's situation is *a fortiori* compared to the late C.O. claim. He asserts a recently acquired religious belief only as entitlement to the dubious benefit of wearing a beard in a prison, not as grounds for avoiding two years of military service with the risk of injury or death. *Cf. DeWalt v. Commanding Officer, Fort Benning, Georgia*, 476 F.2d 440 (5th Cir. 1973).

The due process violation that inheres in the regulation's conclusive presumption against the sincerity of a religious belief that prompts growth of a beard after incarceration is made manifest in this case by the government's stipulation that the religious belief of this petitioner is sincere. Thus the regulation presumes precisely the opposite of what the government concedes to be true. Arbitrariness of that sort is the antithesis of due process. *Stanley v. Illinois*, 405 U.S. 645, 654–55, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Carrington v. Rash*, 380 U.S. 89, 95, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965).

The regulation fares no better when considered in equal protection terms. The right in question, wearing a beard out of religious conviction, is entitled to significant protection whether the religious belief was acquired before or during incarceration. *Teterud v. Gillman*, 385 F.Supp. 153, 157–60 (S.D.Iowa 1974); see *Clay v. United States, supra*, at 702–03; *Smith v. Laird, supra*, at 311. While the right may not be absolute, it sufficiently implicates important first amendment values to require the showing of a substantial governmental interest that will justify the distinction between religious beliefs acquired prior to confinement and those acquired during confinement. See *Cruz v. Beto, supra*; *Long v. Parker*, 390 F.2d 816, 820 (3d Cir. 1968); *United States v. Kahane*, 396 F.Supp. 687, 699 (E.D.N.Y. 1975).

The government asserts three interests: prison hygiene, ease of prisoner identification, and avoiding concealment of weapons or contraband. If there were a total prohibition on beards, it is not clear that these interests would sufficiently outweigh the right to practice one's religion by declining to shave. See

*Procunier v. Martinez,* 416 U.S. 396, 413–14, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1972). Hygiene requirements could be specified and made a condition of the right to wear a beard. Security concerns might well be adequately met by beard searches at reasonable intervals, see *Teterud v. Gillman, supra,* 385 F. Supp. at 160.

In this case, however, the issue is only whether these interests serve in any significant way to justify the distinction between beards grown based on post- and pre-confinement religious beliefs. Nothing has been shown to indicate that the hygiene, identification or security interests are even the slightest bit more significant when the beard results from a religious belief acquired after confinement. Arguably the governmental interest in identification of prisoners is slightly advanced by prohibiting beards grown during confinement. However, obviously no rapid change of appearance occurs, and subsequent photographing would seem to afford an adequate identification record. The interests asserted are not substantial enough to justify the distinction made by the regulation.

The only possible interest rationally to be served by the distinction is the administrative convenience of avoiding the case-by-case determination of the sincerity of beliefs alleged to have been acquired after incarceration. In many instances a person's adherence to religious precepts over a long period of time prior to incarceration will provide a surer basis for gauging sincerity than the brief interval following confinement that is present in a case like this petitioner's. Yet the converse will sometimes be true. The pre-confinement beliefs may have been espoused only days before incarceration, while a prisoner may demonstrate over an extended period of time sincere adherence to religious beliefs acquired in prison. In any event, the history of the C.O. cases amply demonstrates the inadequacy of any reliance on administrative convenience.

For these reasons, that portion of the regulation requiring that "the inmate had the beard upon commitment" is unconstitutional on its face and as applied to this petitioner. Accordingly, judgment will enter directing the respondent to return petitioner forthwith to general population and to restore to him the good time credits forfeited because of his violation of Bureau of Prisons Policy 7300.64A(6). Since his confinement in administrative segregation caused petitioner to miss an opportunity for parole consideration, respondent is also directed to arrange for petitioner to be scheduled for a parole hearing at the next available opportunity.

## RULING ON DEFENDANT'S MOTION TO VACATE

The government has moved to vacate the judgment in this case on the ground that the stipulation concerning the sincerity of petitioner's religious beliefs was entered into inadvertently. Fed.R. Civ.P. 60(b). The government contends it intended to stipulate only that petitioner was claiming a sincere religious belief, and not that he actually held one. The government has also submitted the administrative file of petitioner's case to provide a basis for decision in the event the stipulation were withdrawn.

■ Even if the government's inadvertence justified withdrawing the stipulation, the undisputed facts demonstrate that the petitioner is still entitled to judgment. As the Court's prior memorandum explained, the clause of the pertinent regulation, Bureau of Prisons Policy Statement 7300.64A, that permits a beard worn for religious reasons only if the beard existed at the date of confinement is unconstitutional on its face. Moreover, the administrative file reveals that this regulation was unconstitutionally applied to petitioner. The basis for the adverse action taken by the Bureau of Prisons is plainly revealed by the statement of reasons in the denial of petitioner's pursuit of an administrative remedy. Petitioner was told by the reviewing administrator: "I have studied your file and can find nothing to indi-

cate that you had a beard *upon commitment*." (emphasis added). After noting that photos of petitioner "taken early in your incarceration" showed him without a mustache, the administrator concluded: "I can't believe that you would not have had a mustache, which was not prohibited at that time, if your present beliefs had been held at that time." While it is somewhat unclear whether "at that time" in this sentence refers to initial commitment or an early stage of incarceration, it is certain that the administrator was not concluding that petitioner lacked a bona fide *present* religious belief. Indeed, he contrasts petitioner's "present beliefs" with their apparent absence at some earlier time.

In short, the Bureau of Prisons has applied the regulation and found petitioner in violation because he did not have a beard at the time of commitment. The adverse action was not preceded by any administrative determination that, as of the date he was disciplined, petitioner lacked a sincere religious belief that prompted him to grow a beard. Thus, whether the government concedes or disputes the sincerity of petitioner's religious belief, the record indisputably shows the absence of an administrative finding necessary to support the challenged adverse action. In these circumstances, there is no reason to disturb the judgment.

Of course, nothing in this Court's prior or present ruling prevents the Bureau of Prisons from making a current determination as to whether petitioner's beard is the result of a presently held sincere religious belief or from disciplining him for violation of the regulation if he is found not to have a sincere religious belief. Any such discipline would be prospective only. All that has been adjudicated is that the Bureau of Prisons may not conclude that a prisoner's beard is not the result of a sincere religious belief solely from the fact that the beard was not worn at the time of initial confinement.

The motion to vacate is denied.