**Alfred MONROE a/k/a Ismail Abdur Rahim et al., Plaintiffs,**

v.

**Roy BOMBARD, Individually and as Superintendent of Greenhaven Correctional Facility, et al., Defendants.**

**No. 76 Civ. 1897.**

United States District Court,
S. D. New York.

Oct. 22, 1976.

Donald Grajales, Project Director, Bronx Legal Services Corp. by Stephen M. Latimer, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., of the State of New York by Kevin J. McKay, Deputy Asst. Atty. Gen., New York City, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs have moved for an injunction barring the application of the no-beard rule at the Greenhaven Correctional Facility to those inmates required to grow beards out of medical necessity, and to members of the Sunni Muslim religion who must grow beards in the free exercise of their religious beliefs. In addition, plaintiffs have moved for class action certification. To the extent indicated herein, plaintiffs' motions are hereby granted.

*Facts:*

On April 27, 1976, plaintiff Monroe filed a pro se complaint challenging the application of the rule prohibiting the wearing of beards at the Greenhaven Correctional Facility ("Greenhaven") and seeking injunctive relief and damages. On June 23, 1976, an amended complaint was filed by the named plaintiffs, all of whom are confined at Greenhaven, on behalf of themselves and all others similarly situated. Jurisdiction

was founded on 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(3). The amended complaint, which seeks injunctive and declaratory relief, and damages, alleges that plaintiffs are required to grow beards for medical or religious reasons, or both, and that they have been forbidden to do so by the Greenhaven administration.

Named as defendants in the action were Roy Bombard, the Superintendent of Greenhaven, and the man responsible for the overall operation and management of the institution; Walter Fogg, Deputy Superintendent at Greenhaven in charge of security; and Officers Sperbeck, Seitz and Murray, who are correctional officers on the staff at Greenhaven.

On May 3, 1976, plaintiffs moved for a preliminary injunction. Hearings on the motion were held on May 13, June 3, June 24, and July 1, 1976.

*Discussion*

I

*The Medical Claim*

Regulation 2.5 of the Greenhaven Correctional Facility Inmate Handbook of Rules and Regulations (June, 1975) provides that "[a] beard of any type is not allowed".[1] The testimony indicates that the only exception to this rule is made in cases of medical necessity. In a memorandum to all inmates dated June 25, 1976, Superintendent Bombard restated the facility's policy in this regard as follows:

"If an inmate believes he has a skin condition which becomes aggravated by shaving regularly, he should be examined by one of the Facility Physicians, for treatment of this condition. If the attending physician believes that regular shaving is a causative factor, he may issue an order exempting the inmate from shaving with a razor. This order authorizes the inmate to shave with clip-

pers available in the housing units or barber shop. Beard growth may not exceed one quarter of an inch. Orders are written for a period not to exceed 30 days and may be reissued if the physician deems this to be necessary."

Several of the named plaintiffs suffer from a skin condition known as pseudo folliculitis barbe.[2] According to the testimony of Dr. Oliver Fein, a dermatologist on the faculty of the Albert Einstein College of Medicine, this condition is relatively common among blacks. The treatment of choice for the disease is to allow the facial hair to grow without shaving. According to Dr. Thomas Rigney, Regional Director of Health Services of the New York State Department of Corrections, the policy at Greenhaven is to treat pseudo folliculitis by allowing inmates to grow beards not in excess of one quarter inch in length. According to Dr. Rigney, the quarter inch in length is sufficient to avoid aggravating or irritating the skin. Dr. Fein testified, however, that in his expert opinion, a beard of one quarter inch length would, in some circumstances, be too short to allow effective treatment of the condition. Indeed, one of the witnesses testified that he continued to suffer from pseudo folliculitis when forced to trim his beard to a quarter inch length.

While it is true that Dr. Rigney has had considerable experience in treating pseudo folliculitis, there is absolutely no justification for a rigid rule with regard to beards grown out of medical necessity. Inmates who must grow beards for medical reasons are entitled to have that right regulated by competent medical advice—not by administrative fiat. Accordingly, defendants are hereby ordered to modify their present policy with respect to beards grown for medical reasons so that beards in excess of one quarter inch in length may be grown

---

1. Penalties for violation of the no-beard rule are set forth in Rule 3.20.1 of the Standards of Inmate Behavior (Inmate Rules, Penalties and Outline of Procedures), New York State Department of Correctional Services, September 1, 1975.

2. In essence, pseudo folliculitis occurs when hair tips are sharpened after shaving so that as the hair grows back it reinvades the skin causing irritation, pain and itchiness.

in cases where the medical staff at the prison has determined that this is necessary in order to treat an inmate's condition properly.

It is important to note that several of the witnesses testified that for a period of time commencing in August, 1975, the doctors at the prison were prohibited from issuing medical passes to grow beards unless such passes had first been cleared by the administrative staff. That testimony was never directly refuted.

■■■ It is now well settled in this circuit that deliberate indifference to the medical needs of a prisoner violates 42 U.S.C. § 1983. *See, e. g., Bishop v. Stoneman*, 508 F.2d 1224, 1225 (2d Cir. 1974); *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974); *Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972); *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir. 1970). Moreover, the arbitrary and capricious actions of certain guards and supervisory officers at the Greenhaven Facility in failing to implement, indeed in subverting prison regulations, amounts to a fundamental deprivation of plaintiffs' due process rights. Since I have been assured, however, that the current policy with respect to beards grown out of medical necessity is as it has been

restated by the Superintendent on June 25, 1976, and since I am confident that this policy will remain in effect, as modified in accordance with this opinion, no further order need be issued.

## II

### The Religious Claim

■■■ Each of the named plaintiffs is a follower of the Orthodox Islam religion, commonly known as Sunni Muslims.[3] Hamim Abdul Ahad, a Sunni Muslim minister, testified that Muslims are admonished to "wear beards and clip the mustache."[4] Apparently, no minimum length to which beards should be grown is required by the Sunni Muslim religion. The operation of Regulation 2.5, however, prevents Sunni Muslims at Greenhaven from conforming altogether with this requirement of their religion. Despite repeated requests to, and conferences with prison officials, Sunni Muslims have been consistently refused permission to grow beards.[5]

Furthermore, the record is replete with evidence of punitive sanctions being applied against Sunni Muslims who refused to shave their beards. These sanctions included loss of commissary and other privileges,

---

**3.** There is no assertion here that plaintiffs' claim that they are Sunni Muslims or that the wearing of beards is an integral aspect of their religious observance is made in bad faith. *Cf. Theriault v. Carlson*, 495 F.2d 390, 394–95 (5th Cir.), *cert. denied*, 419 U.S. 1003, 95 S.Ct. 323, 42 L.Ed.2d 279 (1974), *remanded sub nom., Theriault v. Silber*, 391 F.Supp. 578 (W.D.Tex. 1975).

**4.** There was some suggestion during the hearings that wearing a beard was not a specific requirement of the Sunni Muslim religion. There is no necessity, however, that the religious practice at issue be absolutely mandated by the doctrinal requirements of religious observance in order to bring plaintiffs' claim within the ambit of constitutional protection. It is not for the courts to decide which practices or observances are or are not strict requirements of a particular faith. *See Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *Teterud v. Burns*, 522 F.2d 357, 360 (8th Cir. 1975), and cases cited therein; *Geller v. Secretary of Defense*, 423 F.Supp. 16 (D.D.C., 1976). Proof that the practice at issue is

"deeply rooted in religious belief" is sufficient. *Teterud v. Burns, supra.*

**5.** Shortly before the filing of this opinion, I was informed that Commissioner Ward of the State Department of Correctional Services has modified Rule 3.20.1 for Sunni Muslims. It now permits Sunni Muslims to wear one inch beards.

In my view, however, this recent change in departmental policy does not moot plaintiffs' action. The "voluntary cessation of allegedly illegal conduct does not deprive [a] tribunal of power to hear and determine the case, *i. e.,* does not make the case moot." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). There remains "a public interest in having the legality of the practices settled [which] militates against a mootness conclusion." *Ibid.* Therefore, since the defendants have not admitted that the challenged activity is illegal nor demonstrated conclusively that the wrong will not be repeated, *see id.,* at 633, 73 S.Ct. 894, I cannot consider the case moot.

loss of medical appointments outside the institution and keep-lock (continuous confinement) for substantial periods of time.

 When an individual is forced by threat of state-imposed sanction to perform acts "undeniably at odds with fundamental tenets of [his] religious beliefs", the First Amendment's guarantee of the free exercise of religion become seriously jeopardized. *Wisconsin v. Yoder*, 406 U.S. 205, 218, 92 S.Ct. 1526, 1534, 32 L.Ed.2d 15 (1972). While it is true that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system", *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948), it is equally true that a convicted prisoner does not forfeit his constitutional protections when the prison gate closes behind him. *Burgin v. Henderson*, 536 F.2d 501 (2d Cir. 1976). *See also, Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Detainees of Brooklyn House of Detention for Men v. Malcolm*, 520 F.2d 392, 397 (2d Cir. 1975).

 In the context of First Amendment liberties, courts have frequently intervened to insure that the rights of prisoners to practice their religious beliefs were given adequate scope. Thus, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty," *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 n. 2 (1972). *See Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Mukmuk v. Commissioner of Dep't of Correctional Services*, 529 F.2d 272, 275 (2d Cir. 1976); *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975); *LaReau v. MacDougall*, 473 F.2d 974, 979 (2d Cir. 1972), *cert. denied*, 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973); *Pierce v. LaVallee*, 293 F.2d 233 (2d Cir. 1961); *Maguire v. Wilkinson*, 405 F.Supp. 637, 639 (D.Conn.1975); *see also, Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct.

2800, 41 L.Ed.2d 495 (1974); *Sostre v. McGinnis*, 334 F.2d 906, 908 (2d Cir.), *cert. denied*, 379 U.S. 892, 85 S.Ct. 168, 13 L.Ed.2d 96 (1964). What emerges is the government's obligation to reconcile a prisoner's First Amendment right to the free exercise of religion "with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier, supra,* 417 U.S. at 822, 825–26, 94 S.Ct. at 2804. *See also, Kahane v. Carlson, supra,* 527 F.2d at 495.

While there is no binding precedent within this circuit defining the right of a member of an established religion to wear a beard in prison, this circuit's recent decision in *Burgin v. Henderson, supra,* provides the analytical framework within which this case must be decided. The Burgin court said:

"On this record, the proper disposition of this appeal is indicated by *Sostre v. Preiser*, 519 F.2d 763 (2d Cir. 1975), where we remanded a similar case for a factual hearing on the state's purported justification of a rule prohibiting beards. It may well be that the state's interest in hygiene and identification of inmates outweighs the prisoner's interest in growing a beard as required by his religion, but there is nothing in the record now to show that. As we pointed out in *Sostre v. Preiser, supra,* 519 F.2d at 764:

'But even if the institutional purpose is legitimate and substantial, "that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). *See also Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974).'

At the very least, a record must be made as to what the no-beard rule is; how it is applied; whether any beards are allowed; whether, as plaintiffs allege, there is no hygienic problem; and whether the need for identification requires total prohibition of beards, rather than some narrow-

er limitation." [Footnote omitted] 536 F.2d at 503.

The state offered the testimony of Mr. Carl Berry, Assistant Deputy Commissioner for Facility Operations in the New York State Department of Corrections, on the rationale for Greenhaven's no-beard rule. Mr. Berry testified that the primary reason for the rule was to facilitate identification of inmates. Inmates at Greenhaven are issued identification cards with their photographs on them. Frequent changes in facial appearance would render these cards useless according to Berry. The testimony did indicate, however, that problems of identification could be solved through periodic re-photographing of inmates who grew beards, though such a procedure might be administratively and financially burdensome. Moreover, Mr. Berry testified that he would have no trouble in identifying a guard who had a beard and then shaved it off. To the best of Mr. Berry's knowledge, no inmate had ever used a beard as a guise to escape from Greenhaven. Furthermore, no contraband was ever found in an inmate's beard. Finally, no problems of identification have arisen with respect to inmates who have grown beards for medical reasons.

 Limitations by state prison authorities upon the religious freedom of inmates may be imposed only "if the state regulation has an important objective and the restraint of religious liberty is reasonably adapted to achieving that objective." *LaReau v. MacDougall, supra,* 473 F.2d at 979. *See also, Mawhinney v. Henderson,* 542 F.2d 1 (2d Cir., 1976); *Burgin v. Henderson, supra,* 536 F.2d at 503; *Kahane v. Carlson, supra,* 527 F.2d at 495 n. 6. Thus, even if the institutional regulatory purpose is legitimate and substantial, "that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960); *see*

*also, United States v. Robel,* 389 U.S. 258, 268, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967); *Burgin v. Henderson, supra,* 536 F.2d at 504. *Sostre v. Preiser, supra,* 519 F.2d 763, 764 (2d Cir. 1975).

 In sum, while deference must be accorded to the expertise and discretionary authority of prison officials, regulations which are more restrictive than necessary to carry out legitimate penological objectives cannot be left to stand. *See Pell v. Procunier, supra,* 417 U.S. at 826, 94 S.Ct. 2800; *Procunier v. Martinez, supra,* 416 U.S. at 413, 94 S.Ct. 1800.

 With respect to inmate identification, the record indicates that a no-beard rule is unnecessary. The testimony reveals that an inmate who grows a beard during the term of his incarceration, or whose beard becomes significantly longer, can be reidentified by having a second photograph taken. *See Teterud v. Gillman,* 385 F.Supp. 153, 160 (S.D.Iowa 1974), *aff'd sub nom., Teterud v. Burns,* 522 F.2d 357 (8th Cir. 1975). While such an alternative may be administratively inconvenient or financially burdensome, such difficulties do not suffice to excuse the state from according basic constitutional rights to inmates. *See e. g., Detainees of Brooklyn House of Detention v. Malcolm, supra,* 520 F.2d at 399; *Rhem v. Malcolm,* 507 F.2d 333, 341 n. 20 (2d Cir. 1974).

 Mr. Berry also testified with respect to the possibility of concealment of contraband in an inmate's beard.[6] It would appear, however, that it would be far easier for a prisoner to hide such objects in his clothing or other parts of his body. Indeed, it seems frivolous to suggest that beards are likely hiding places for contraband where inmates are permitted to wear three-inch Afro haircuts. In any event, concerns over the concealment of contraband could easily be met through beard searches at reasonable intervals. *See Maguire v. Wilkinson, supra,* 405 F.Supp. at 640–41; *Teterud v. Gillman, supra,* 385 F.Supp. at 160.

**6.** The state offered no testimony that the no-beard rule was justified on hygienic grounds. *Cf. Sostre v. Preiser, supra,* 519 F.2d at 764.

In sum, the various rationales for a no-beard rule posited by the state will not support the concomitant constitutional infringement on certain inmates' free exercise of their religion. "Justifications founded only on fear and apprehension are insufficient to overcome rights asserted under the First Amendment." *Teterud v. Burns, supra,* 522 F.2d at 361–62. *See Tinker v. Des Moines Community School Dist.,* 393 U.S. 503, 508–09, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The proof adduced at the various hearings leaves me with no doubt that the institutional requirements of Greenhaven Prison with respect to security and prisoner identification can reasonably be met through other viable and less restrictive means than the absolute ban on the wearing of beards by inmates. As such, Regulation 2.5 of the Greenhaven Correctional Facility, to the extent that it prohibits Sunni Muslims at the prison from growing beards in conformity with their religious beliefs, is violative of the First Amendment. Since the no-beard rule at Greenhaven, as applied to Sunni Muslims, is not justified by any "important or substantial government interest", *see Kahane v. Carlson, supra,* 527 F.2d at 495 n. 6, its operation must be enjoined.[7]

*Class Action Determination*

Plaintiffs seek to bring this action as a class action pursuant to Rules 23(a) and 23(b)(2), F.R.Civ.P. A class action is maintainable under Rule 23(b)(2) if all the requirements of Rule 23(a) have been met, and

"[T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

The putative class consists of all prisoners at Greenhaven, and two subclasses; (1) all those inmates required to grow beards for medical reasons, and (2) all those required to grow beards in accordance with the free exercise of their religious beliefs. Since the testimony at the hearings has concerned the no-beard rule only as it has applied to Sunni Muslims, the latter subclass cannot extend beyond this group of inmates.

There are approximately 1,850 prisoners at Greenhaven. Of these, some 70% are black; a substantial number of black inmates—the testimony does not reveal a precise figure—are required to grow beards for medical reasons. The testimony also indicates that there are approximately 100 Sunni Muslims at Greenhaven who are required to grow beards for religious reasons. Both putative subclasses therefore meet the numerosity requirement of Rule 23(a)(1), F.R. Civ.P. *See, e. g., Robertson v. National Basketball Ass'n,* 389 F.Supp. 867, 896 (S.D. N.Y.1975). Moreover, there is a clear factual nexus linking all of the members of the putative class. Thus, the common questions of law and fact requirement of Rule 23(a)(2), F.R.Civ.P., has been met. *Cf., Inmates of Attica Correctional Facility v. Rockefeller,* 453 F.2d 12, 24 (2d Cir. 1971); *United States ex rel. Walker v. Mancusi,* 338 F.Supp. 311, 315–16 (W.D.N.Y.1971), *aff'd on other grounds,* 467 F.2d 51 (2d Cir. 1972). Furthermore, the claims being asserted—that plaintiffs are being illegally denied the right to grow beards for medical or religious reasons—meet the test of typicality of Rule 23(a)(3), F.R.Civ.P. *See, e. g., Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515, 521 (S.D.N.Y.1973), *appeal dismissed,* 496 F.2d 1094 (2d Cir. 1974). Finally, the

---

7. Needless to say, in granting to inmates the right to wear beards out of religious conviction, the state is entitled to scrutinize the sincerity and bona fides of those prisoners seeking to avail themselves of the entitlement, and to reject the claims of those prisoners which are obvious shams. *See, e. g., Maguire v. Wilkinson, supra,* 405 F.Supp. at 640; *United States v. Kahane,* 396 F.Supp. 687, 703 (E.D.N.Y. 1975); *Theriault v. Carlson,* 495 F.2d 390, 395 (5th Cir. 1974). Nevertheless, the right to grow a beard out of religious conviction is entitled to constitutional protection even where the religious beliefs were acquired only after incarceration had commenced. *See Maguire v. Wilkinson, supra,* 405 F.Supp. at 640; *Teterud v. Gillman,* 385 F.Supp. 153, 157 (S.D.Iowa 1974), *aff'd sub nom., Teterud v. Burns,* 522 F.2d 357 (8th Cir. 1975).

putative class is fairly and adequately represented by the named plaintiffs and their counsel.

With respect to the requisites of Rule 23(b)(2), F.R.Civ.P., it is clear that defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

Accordingly, this action is maintainable as a Rule 23(b)(2) class action on behalf of all inmates at Greenhaven Correctional Facility who are now, or will be required to grow beards for medical reasons, and who are Sunni Muslims required to grow beards as part of their religious observance.

It is hereby ordered that the foregoing shall constitute this court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a), F.R.Civ.P. Pursuant to Rule 65(a)(2), F.R.Civ.P., trial of this action will be consolidated with the hearings on the application for a preliminary injunction, and plaintiffs' motion for an injunction will be granted to the extent indicated herein.

IT IS SO ORDERED.