Trevor Lloyd **PHILLIPS**, Plaintiff,

v.

Thomas A. **COUGHLIN**, III, et al., Defendants.

No. 81 Civ. 7565 (WCC).

United States District Court,
S.D. New York.

May 4, 1984.

Janet I. Neustaetter, New York City, for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendants; Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Joyce Andren, Asst. Atty. Gen., New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiff Trevor Lloyd Phillips ("Phillips"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), commenced the instant action pursuant to 42 U.S.C. § 1983 to challenge the constitutionality, as applied to him, of DOCS Directive # 4914, which requires *inter alia* that every new male inmate receive one haircut and shave for purposes of an initial identification photograph.[1] Plaintiff, a Rastafarian, maintains that his religious beliefs forbid him from allowing his beard to be shaved or his locks to be cut, and thus he claims that Directive # 4914 violates his first amendment right to the free exercise of religion.

Although Phillips instituted this action *pro se*, the Court subsequently appointed counsel on his behalf. The amended complaint filed by plaintiff's appointed attorney sought both damages for an initial forced shave and injunctive relief to prevent DOCS from either shaving plaintiff again or cutting his hair. Prior to trial, however, the parties entered into a Stipulation of Partial Settlement which resolved the issue of injunctive relief and left for judicial determination only the question of plaintiff's entitlement, if any, to damages resulting from the initial shave.

The case is currently before the Court following a one-day nonjury trial held on September 6, 1983. This Opinion and Order incorporates the Court's findings of fact and conclusions of law pursuant to Rule 52, F.R.Civ.P. For the reasons stated below, I find that plaintiff is not entitled to recover any damages as a consequence of his single shave by DOCS officials pursuant to Direction # 4914.

The Stipulation of Partial Settlement dated September 6, 1983 evinces the parties' agreement concerning virtually all of the material facts underlying plaintiff's claim. Phillips commenced the instant action on December 7, 1981 in order to enjoin the enforcement of Directive # 4914 upon his anticipated transfer to DOCS custody. *See* Stip. at 1–2, ¶¶ 1–2. At the time he filed his complaint, plaintiff was incarcerated at Rikers Island under the jurisdiction of the New York City Department of Corrections. *See id.* at 1, ¶ 1.

On March 11, 1982, plaintiff was transferred to DOCS's custody at the Ossining Correctional Facility. *See id.* at 2, ¶ 3. At the time of his arrival at Ossining, Phillips had a beard and wore his hair in dreadlocks. *See id.* at 2, ¶ 4. Upon his arrival, plaintiff advised corrections officers that he objected on religious grounds to both the cutting of his hair and the shaving of his beard, and he further informed the officers of the pendency of the instant lawsuit. *See id.* at 2, ¶ 5. Nevertheless, Phillips' beard was shaved over his objection pursuant to Directive # 4914. *See id.* Plaintiff's hair was not cut, however, and he was subsequently allowed to regrow his beard. *See id.* at 2, ¶ 7.

As an initial matter, it is important to emphasize the narrow focus of the Court's inquiry. Because plaintiff's hair was not cut and because DOCS has agreed not to cut plaintiff's hair during the remainder of his current term of incarceration, *see id.* at 2–3, the permissibility of DOCS's initial haircut requirement, measured against a prisoner's validly asserted constitutional right to the free exercise of religion, is not before the Court.[2] Moreover, defendants

---

1. DOCS Directive # 4914, dated January 18, 1982, provides in pertinent part that:

   Upon reception, males shall receive an initial haircut and shave for the purpose of taking an I.D. photograph. For the purpose of the initial clean-shaven identification photograph, inmates who have a beard upon reception shall be permitted the option to use an electric razor, hand razor, hand clippers, or a depilatory to remove their beard.

2. I note in passing that the security justification which I find sufficiently compelling to warrant an initial shave in the face of a prisoner's religious interests does not necessarily apply with equal force to justify Directive # 4914's requirement of a haircut. The identification purpose for such a haircut may well be adequately satisfied by the less intrusive alternative of simply tying the inmate's hair back for purposes of the initial photograph. That issue is not, however, before me in the instant case.

do not dispute the sincerity of Phillips' adherence to his Rastafarian beliefs that require him to maintain his hair and beard. *See id.* at 3, ¶ 1. Thus, I approach the inquiry from the premise that Phillips has a valid right under the First Amendment to maintain his facial hair unshaved in the free exercise of his religious beliefs. Finally, plaintiff does not allege that he was physically abused by DOCS's officers during the shaving process. *See id.* at 2, ¶ 6. Accordingly, I need only determine whether he is entitled to damages based solely upon the involuntary shaving of his beard.

■ It is now well settled that an individual does not lose all of his constitutional rights when he is incarcerated for committing a crime. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974); *Burgin v. Henderson,* 536 F.2d 501, 502 (2d Cir.1976); *Monroe v. Bombard,* 422 F.Supp. 211, 216 (S.D.N.Y.1976). However, because of the exigencies of the institutional environment and of considerations underlying our penal system, incarceration brings about the necessary withdrawal or limitation of many privileges and rights enjoyed by the ordinary citizen. *See Wolff,* 418 U.S. at 555, 94 S.Ct. at 2974; *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Thus, in the First Amendment context, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell,* 417 U.S. at 822, 94 S.Ct. at 2804.

■ In analyzing a challenge to a prison regulation that impinges upon an inmate's First Amendment interests, the Court looks to the legitimate policies and goals of the corrections system furthered by the challenged regulation. *See id.* Such a regulation will be upheld only if (1) it furthers one or more of the substantial governmental interests of security, order, and rehabilitation, and (2) its encroachment on First Amendment freedoms is no greater than is necessary or essential to protect the particular governmental interest in-

volved. *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974); *see Burgin,* 536 F.2d at 503. Even if the State's interest is legitimate and substantial, the challenged regulation will not be allowed to stand if that interest can be achieved by a more narrowly-drawn rule which has a less intrusive impact upon the inmate's fundamental personal liberties. *See Monroe,* 422 F.Supp. at 217.

Since 1976, DOCS policy toward inmate facial hair has undergone a significant evolution. Prior to 1976, DOCS rules totally prohibited the wearing of beards by prison inmates. However, in response to a constitutional challenge to this practice brought by a group of Sunni Muslim inmates, then-Commissioner Ward promulgated the original version of Directive # 4914, which excepted Sunni Muslims from the no-beard rule. Shortly thereafter, in *Monroe,* Judge Carter of this Court ruled that the prior no-beard rule violated the First Amendment rights of the Sunni Muslims. *See Monroe,* 422 F.Supp. at 218. Judge Carter reasoned that the security and prisoner identification rationales proffered for the practice could be achieved by other viable and less restrictive means than an absolute ban on beards. *See id.*

Following the *Monroe* decision, Directive # 4914 was modified on January 1, 1977 and again on July 12, 1977 to provide that inmates in reception and classification status must remain clean-shaven, but that once they entered the general prison population they could wear groomed beards. This version of Directive # 4914 was the subject of two class-action challenges on behalf of classes consisting of Muslim inmates who sought to wear beards in the free exercise of their religious beliefs and certain other inmates in reception who were required to grow beards for medical reasons. In an Opinion dated March 11, 1982, Judge Sand of this Court approved a settlement of these consolidated actions whereby Directive # 4914 was amended to allow all inmates to maintain beards following an initial shave upon reception, the present version of the regulation. *See*

*Webb v. Dalsheim,* 80 Civ. 7141, and *Farrad v. Walters,* 81 Civ. 2705, slip op. (S.D. N.Y. Mar. 11, 1982) (Sand, J.).

According to Arthur A. Leonardo ("Leonardo"), Deputy Commissioner for Facility Operations of the DOCS and the individual in charge of the day-to-day operation of the 43 correctional institutions under DOCS control, DOCS's fundamental purpose is to ensure that people remanded to their custody remain incarcerated. *See* tr. at 105. This comports with the Supreme Court's view that one of the important roles of any corrections system is the "protective function [served] by quarantining criminal offenders for a given period of time." *Pell,* 417 U.S. at 823, 94 S.Ct. at 2804. To this end, defendants seek to justify their procedure of taking a clean-shaven photograph of every new inmate as necessary to facilitate the identification and subsequent recapture of an inmate in case he escapes or is otherwise lost from DOCS's custody. *See* tr. at 72–73. Leonardo testified that it is standard practice in the event of an escape for DOCS to supply its own staff and the police officers involved in security and recapture efforts with both current and clean-shaven photos of the missing prisoner. *See* tr. at 75.

It is hard for the Court to quarrel with Leonardo's observation that one of the easiest and fastest ways for an individual to alter his appearance is by shaving his beard or mustache. *See* tr. at 75. By altering his appearance, a missing inmate obviously increases his chances of avoiding detection. This common-sense point is amply illustrated by several examples noted by Leonardo of cases in which prisoners aided an escape and/or eluded recapture in part through a change of appearance that included the shaving of facial hair. *See* tr. at 73–75. Moreover, I find credible Leonardo's uncontroverted opinion that absent a clean-shaven photograph there is no way for DOCS to know what an inmate who wears a beard and/or mustache looks like without it. *See* tr. at 73. Thus, the State has a strong interest in maintaining such a photograph in order to carry out the protective function of the prison system.

■ Although plaintiff attempts to discredit the importance of removing facial hair by pointing out that persons often take additional steps in an effort to disguise their true identities, this argument misses the mark. Regardless of any additional efforts one might undertake to disguise himself, it remains that shaving is one of the most basic, easily accomplished, and drastic changes that a man with a beard can make to his appearance. By ensuring that it can identify its prisoners either clean-shaven or with facial hair, DOCS lessens the effectiveness of this form of disguise, whether used alone or in conjunction with other methods of subterfuge. While not a perfect counter to prisoners' efforts to escape and avoid detection,[3] it surely increases the likelihood that a missing inmate will be identified and successfully recaptured. Thus, I find that the State has a strong interest in taking and maintaining[4] a clean-shaven photo of all inmates in DOCS's custody.[5]

---

**3.** This is evinced by the fact that there have in recent years been successful escapes from DOCS custody. *See* Pl.Exs. 24, 25; tr. at 97–98. Although plaintiff points to the relatively low level of escapes—an average of 1.44 per 1,000 inmates over the past 5 years—and high level of recapture—approximately 97% of those who successfully escape—to claim that the risk from escape is so insubstantial that it cannot justify a practice that intrudes upon his religious beliefs, such an argument is unpersuasive at best. *See* Pl.Exs. 24, 25 at 11. The high level of recapture may well be due in part to DOCS's ability to identify its inmates, which is furthered by the clean-shaven photo requirement. Moreover, the existence of such a photo could also conceivably serve as a deterrent to escape. *See* tr. at 98. In any event, the clean-shaven photo requirement

enjoys a strong relationship to the valid penological goals of keeping prisoners in custody and ensuring their swift recapture in the event they escape from custody; the State has a legitimate interest in enforcing the procedure.

**4.** In the instant case, defendants no longer have the clean-shaven photograph they took with such resulting embarrassment and emotional disturbance to Phillips. Although I am indeed troubled by the absence of the picture—as I stated at trial "if it wasn't considered important enough to be retained it wasn't important enough to be taken in the first place"—I accept defendants' explanation that the photo of Phillips was lost in a bureaucratic mishap, in con-

The requirement that every unshaven inmate receive an initial shave is necessary to satisfy the need for a clean-shaven identification photograph. As Leonardo quite aptly stated at trial: "[T]he shaving situation is a situation in which under no circumstance you can get around it. The beard and mustache is either there or it isn't there." Tr. at 104. The State truly has no less intrusive manner of obtaining the clean-shaven photograph than removing the inmate's facial hair; a single shave, as is called for in Directive # 4914, is the simplest, quickest and most comfortable method of accomplishing this.[6] Although it is true, as plaintiff contends, that defendants have not investigated the possibility of exempting certain inmates from the initial shave requirement on the basis of their religious beliefs, such an exemption would run counter to the purpose of the regulation and, in addition, may well create resentment or even raise constitutional issues with respect to inmates not excepted from the requirement. No evidence has been introduced and no reason has been suggested to support the premise that merely because one holds certain religious beliefs he is less likely to attempt to escape from prison than other prisoners.

While I acknowledge that every inmate retains a First Amendment right to the free exercise of his religion, in the prison context that interest must be reconciled with the valid objectives of the corrections system. For the reasons stated above, I find that the initial shave procedure of Directive # 4914 is the least intrusive method available for satisfying a compelling penological interest, and in this instance, that it is a justified encroachment on plaintiff's free exercise of his religion. The initial-shave procedure thus meets both prongs of the test set forth by the Supreme Court in *Procunier v. Martinez*, 416 U.S. at 413, 94 S.Ct. at 1811. Accordingly, plaintiff's claim for damages as a result of his forced shave is dismissed.

Defendants are directed to submit a proposed judgment within five days of the date of this Opinion and Order on five days' notice. This case will be transferred to the Suspense docket of the Court, pending receipt of the proposed judgment.

SO ORDERED.

---

travention of DOCS's normal policy of retaining such a photo in the inmate's file. *See* tr. at 98–99; letter to Court dated 9/23/83 w/encl. Thus, I decline to use the absence of the photograph as a basis for doubting the sincerity of the State's asserted interest in taking the clean-shaven picture.

5. Although procedures followed by other corrections systems are relevant to the Court's inquiry into the need for a particular regulation, they are not controlling. *See Procunier*, 416 U.S. at 414 n. 14, 94 S.Ct. at 1812 n. 14. Thus, here, although I recognize that the Federal and New York City systems apparently do not require an initial shave, *see* tr. at 90–91, I am nevertheless persuaded that there exists a valid and necessary penological interest underlying defendants' procedure.

6. This is to be distinguished from the initial haircut requirement of Directive # 4914, the validity of which is not currently before the Court. In that situation, the viability of photographing an inmate with his hair tied back may well provide the State with a satisfactory albeit not perfect alternative when weighed against a prisoner's religious rights. Moreover, changing the length of one's hair is a seemingly far less effective method of disguising one's appearance than is growing or shaving facial hair.