**Dawud Abdullah MUNIR, Talib Kaleb Saafir Aktab, S. Shafif Abdulrahman, Plaintiffs,**

v.

**Elton I. SCOTT, Defendant.**

**No. 87–CV–73711–DT.**

United States District Court, E.D. Michigan, S.D.

April 27, 1992.

Nicholas J. Rine, University of Michigan, Clinical Law Program, Julie K. Field, University of Michigan, Clinical Law Program, Paul D. Reingold, Michigan Clinical Law Program, Ann Arbor, Mich., for plaintiffs.

David M. Gadaleto, Michigan Dept. of Atty. Gen., Corrections Div., Jann R. Baugh, Michigan Dept. Atty. Gen., International Trade & Agriculture Div., Lansing, Mich., for defendant.

## ORDER ACCEPTING REPORT AND RECOMMENDATION

FEIKENS, District Judge.

The Court has reviewed the Magistrate Judge's Report and Recommendation submitted in this case and any objections filed thereto. The Report and Recommendation is hereby accepted as the findings and conclusion of the Court. Accordingly,

IT IS ORDERED that defendant's second motion for summary judgment, filed on October 29, 1990, is granted only as it applies to plaintiffs' claims relating to the ban on incense and is denied in all other respects;

IT IS FURTHER ORDERED that plaintiffs' motions for summary judgment, filed on October 20, 1988, and on December 18, 1990, are denied with respect to their injunctive claims, which are hereby dismissed as moot, granted with respect to their damage claims relating to the ban on prayer oil, and denied with respect to their damage claims relating to the ban on incense;

IT IS FURTHER ORDERED that plaintiffs are given thirty (30) days from the date of this order to brief and document their claim for class certification or to withdraw their re-

quest for class certification, and defendant is then given ten (10) days to respond.

So Ordered.

## Report And Recommendation

PEPE, United States Magistrate Judge.

Plaintiffs, who were at one time inmates at the Joseph Cotton Facility (JCF) at Jackson, Michigan, and in the custody of the Michigan Department of Corrections (MDOC), brought this action under 42 U.S.C. § 1983 against several corrections officials. Plaintiffs, who are Muslim, alleged, *inter alia,* that defendants violated their First Amendment right to free exercise of religion. Currently before the Court are defendant's second motion for summary judgment filed on October 29, 1990; plaintiffs' motion for summary judgment filed on October 20, 1988; and plaintiffs' second motion for summary judgment filed on December 18, 1990. These motions have been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### Procedural Background

Plaintiffs filed this case naming several defendants and alleging a myriad of constitutional violations. At this time, defendant Scott is the only remaining defendant, and plaintiffs' only remaining claim is their allegation that defendant Scott violated their First Amendment right to free exercise of religion by imposing a total ban on religious oils and incense at JCF.

After defendant's first motion for summary judgment was denied as to the free exercise claim on August 11, 1988, and while plaintiffs' first motion for summary judgment was pending, the parties entered into settlement discussions. There have been numerous status conferences and other extended delays in this case to facilitate the settlement effort. Those negotiations were unsuccessful and on April 23, 1990, plaintiffs were appointed counsel. Subsequent settlement negotiations between defense counsel and plaintiffs' counsel were also unsuccessful, and I am now confident that the parties will not be able to settle the case. Defendant filed his second motion for summary judgment on October 28, 1990; plaintiffs' second motion for summary judgment was filed on December 5, 1990. A hearing was held on these motions on April 18, 1991.

In the meantime, on June 12, 1990, Dan L. Bolden, Deputy Director of the Bureau of Correctional Facilities for MDOC, issued a memo to all wardens stating that Muslim inmates would be permitted to purchase and possess religious oils with certain limitations. *See* Memo from Dan Bolden to Wardens (attached to Affidavit of Dan Bolden (filed March 13, 1991)) [hereinafter "Bolden memo"]. At the April 18, 1991, hearing plaintiffs presented evidence that, even after this memo was distributed, a request for oils by an inmate at Camp Tuscola was denied in February 1991. *See* Affidavit of Talib K.S. Akhtab (filed April 5, 1991). Evidence presented by defendant indicated that the oil was denied by a corrections officer who stated that he had never before received a request for religious oils and that he had forgotten about the memo. He admitted that he had erroneously denied the inmate's request, and stated that he attempted to rectify the mistake in April 1991 as soon as he realized his error. *See* Affidavit of Gregory Sparks (filed April 22, 1991). Furthermore, in another affidavit, the Chaplain at Camp Tuscola stated that the inmate's request was approved by him in March 1991 and that his records indicated that the denial was an isolated incident. *See* Affidavit of Warren Paulson (filed April 22, 1991).

Also at the hearing on April 18, 1991, it came to the Court's attention that none of the plaintiffs currently reside at JCF. Furthermore, defendant Scott has retired and is no longer employed by MDOC.

### Analysis

Under Fed.R.Civ.P. 56(c), summary judgment should be granted if the moving party "show[s] that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." In addition, Fed.R.Civ.P. 56(e) provides that when a summary judgment motion has been filed:

[The] adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (to defeat a properly supported summary judgment motion, the adverse party must submit more than "some evidence"; the evidence must be sufficient to support a jury verdict); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (to withstand a summary judgment motion, the non-moving party must present evidence to support every "element essential to that party's case").

*I. Defendant's Second Motion for Summary Judgment*

Defendant filed his second motion for summary judgment on October 29, 1990. He filed supplemental briefs on this motion on March 1, 1991, and July 10, 1991.

I note at the outset that defendant's motion is based in part on his argument that the new policy set forth in the Bolden memo, which allows restricted access to oils, is justified by valid institutional concerns. The issue in this case, however, is whether defendant Scott's prior ban on *all* religious oils was constitutional. In two memos, dated November 3, 1986, and April 29, 1987, defendant Scott clearly stated

that he was prohibiting *all* prayer oils. *See* Pl.Exh. B, C (attached to Pl.Supp.Brief (filed March 28, 1991)). In the November 3, 1986, memo to Chaplain Burrus, defendant Scott stated:

> Please be advised that oils and incense will not be allowed into Jackson Temporary/Cotton Facilities. These items are not required in exercising religious beliefs.

In the April 29, 1987, memo to plaintiff Munir, defendant Scott stated:

> This is in response to your recent letter regarding the purchasing of religious oils. As I have indicated to you verbally in the past, religious oils are not considered by the Department of Corrections to be a legitimate part of your religious services, and therefore, they are not permitted in the institution. This decision has been verified through Central Office Treatment Department and at this point it is final.

Scott has not provided the Court with any evidence to show that his position on the Muslim prayer oils was, indeed, the position of MDOC.[1] Furthermore, in his affidavit, submitted by defendant, Dan Bolden avers:

> That as stated in Plaintiff[s'] complaint, the Cotton Correctional Facility was prohibiting prisoners from possessing religious oils and incense in 1986. Affidavit of Dan Bolden, at ¶ 3 (filed March 13, 1991). Bolden does not, however, indicate that he or MDOC agreed with this policy. Finally, in her affidavit, Barbara Bouchard, JCF Deputy Warden at the time of the ban, states:

1. Plaintiffs have come forward with evidence that defendant Scott refused to allow any oil, despite the fact that higher MDOC officials had prior to that stated that oil would be permitted with certain conditions. In a letter to plaintiff Abdul–Rahman in September 1986, Judith Kalmanek, Assistant Deputy Director of the Department of Corrections, stated:

    Your letter to Director Brown regarding the small vials of religious oils for use by the Muslims has been referred to me for reply. You are correct in your assessment that prisoners in the institutions are permitted to have religious oils. However, there are some circumstances you should be aware of. In many of the facilities, the oil must be first transfer-

red to plastic containers before it is permitted to come in. Under no circumstances are prisoners permitted to keep in their possession glass vials of oil. This is a security issue as you know. In some institutions the oil is kept by the institutional chaplain and given to the prisoner for his personal use under the chaplain's observation. This is also an acceptable alternative.

Pl.Exh. D (attached to Pl.Supp.Brief (filed March 29, 1991)). The letter indicates that a copy was sent to defendant Scott. Nevertheless, Scott continued to ban all oil. *See* Pl.Exh. C (Scott's memo to Munir dated April 1987) (also attached to Pl.Supp.Brief).

"When members of the Muslim Brotherhood, Inc., made a request to order oils, it was denied because prayer oils are not permitted in this facility." Affidavit of Barbara Bouchard, at ¶ 4 (attached to Def.Motion for Summary Judgment (filed Jan. 28, 1988)). Again, there is no indication that anyone other than Warden Scott was involved in imposing this total prohibition. Thus, I find that there is no issue of disputed fact with regard to the fact that defendant Scott totally banned oils and incense from JCF beginning in approximately 1986.

### A. Eleventh Amendment Immunity

In both his first and second supplemental briefs, defendant argues that he is entitled to dismissal under the Eleventh Amendment and the Supreme Court's decision in *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The arguments raised in this brief were specifically rejected by the Supreme Court in *Hafer v. Melo*, —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), and do not require further discussion by this Court.

### B. Mootness

The first issue is whether plaintiffs' claims for *injunctive* relief against defendant in his official capacity are moot. Plaintiffs' claims for damages against defendant in his personal capacity are not mooted for these reasons because those claims are claims for relief for past injury which was suffered by plaintiffs while they were inmates at JCF and while the total ban was in effect. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 8–9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). ■ As the Supreme Court has stated, "mootness has two aspects: 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980).

In this case, plaintiffs' claim for injunctive relief is no longer "live" because defendant Scott, who appears to be the one who determined that prayer oils were not to be allowed in JCF, has retired from MDOC. As noted above, there is no evidence that Scott's former policy was the policy of MDOC; in fact, there is evidence to the contrary. From the evidence before the Court, it also appears that Scott was the only one to assert that oils are not a legitimate part of plaintiffs' religion. There is no evidence that Scott's successor will not follow Bolden's new policy, and because Bolden is not a defendant, the issue of whether he might change the policy is not before the Court. Thus, with defendant Scott out of the picture, plaintiffs do not face any threat [2] which would warrant the need for *injunctive* relief; nor would the inmates currently at JCF, even if this action were certified as a class action.

### C. Class Certification Request

Plaintiffs requested that this action be certified as a class action in ¶ 2 of their complaint. No recommendation has ever been made on the request, primarily because time and again I had anticipated that the parties would settle the case and recognized that class certification would only complicate that process. In addition, plaintiffs were not represented by counsel at the time, and many frustrated telephonic settlement conferences demonstrated that the plaintiffs were not always in agreement or consistent with regard to their goals of the law suit. Thus, their suitability and capability to serve as class representatives was problematic. It is now apparent that the case cannot be settled and plaintiffs are entitled to a ruling on their request, at least with respect to the damage claims.

Plaintiffs have now been appointed counsel. Although plaintiffs' counsel apparently wish to pursue plaintiffs' request for

---

**2.** Although defendant did not argue this point in his brief, it also came to the Court's attention at the hearing on these motions that plaintiffs had all either been transferred or released from custody.

class certification,[3] plaintiffs have not submitted any data on the number of denials of prayer oil, the size of the class, or the named plaintiffs' suitability and capacity to maintain a class action, especially considering that plaintiffs are no longer housed together. The certification issue was raised here as an opposition to defendant's motion. In order for the Court to make its ruling on this issue, especially at this stage in the case, it should be separately briefed and heard. Nevertheless, the Court can at this time dismiss the injunctive claims as moot because, regardless of whether a class is certified, defendant Scott poses no danger to any inmates now that he has retired.

### D. Qualified Immunity

Defendant Scott argues in his first supplemental brief that he is entitled to qualified immunity against plaintiffs' individual capacity damage claims. The key issue in analyzing a claim of qualified immunity is whether the defendant's alleged conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."). The burden is on the plaintiff to allege and prove that the defendant official violated a clearly established constitutional right. *Tucker v. Callahan*, 867 F.2d 909, 913 n. 3 (6th Cir.1989).

The definition of a "clearly established constitutional right" has been elusive. The Sixth Circuit has stated that "in the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself." *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177–78 (6th Cir.1988). In

*Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court instructed:

> The operation of this standard ... depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.... The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 639–40, 107 S.Ct. at 3038–39 (citations omitted).

■ Therefore, it is not enough that at the time of defendant Scott's ban the Supreme Court had clearly stated that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *See Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). On the other hand, *Anderson* clearly indicates that defendant Scott is not entitled to qualified immunity merely because, as defendant argues, there

---

3. *See* Pl.Second Supp.Brief, at 10 (filed June 10, 1991).

is no case law specifically stating that a total ban on prayer oil for Muslims is unconstitutional. Prior to the ban imposed on the prayer oil by defendant Scott in 1986, it was clearly established in the Sixth Circuit that

> [w]hen an inmate's religious freedom is at stake, correctional officials may only adopt regulations which are 'reasonably and substantially' justified by official concern for internal security and inmate discipline.

*Brown v. Johnson,* 743 F.2d 408, 411–12 (6th Cir.), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1984). Even before *Brown,* the Sixth Circuit had stated:

> While recognizing that the courts may not substitute their judgments for those of prison administrators in matters of prison procedure and management, it nonetheless remains true that the "asserted justification of such restrictions on religious practices based on the State's interest in maintaining order and discipline must be shown to outweigh the inmates' First Amendment rights," and "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." ... We are of the opinion that the state must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health or safety in order to establish that its interests are of the "highest order."

*Weaver v. Jago,* 675 F.2d 116, 119 (6th Cir.1982) (citations omitted).

■ The standard in *Brown v. Johnson* sets forth the contours of the free exercise right as clearly and specifically as the standard at issue in *Anderson,* where the determination of qualified immunity rested on the question of whether it was "objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances." *See* 483 U.S. at 640–41, 107 S.Ct. at 3039. Therefore, the relevant question in this case is the objective question of whether a reasonable warden could have believed that the total ban on prayer oil[4] was lawful in light of this clearly established law and the information available to him. *Cf. Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040 ("The relevant question in this case, for example, is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officer possessed. Anderson's subjective beliefs about the search are irrelevant.").

■ First, it should be noted that defendant has not in his current pleadings contested that the plaintiffs' religious freedom is at stake. Although defendant at one point did express his opinion that the oils were "not required" for plaintiffs to exercise their religious beliefs, and "religious oils are not considered by the Department of Corrections to be a legitimate part of [plaintiffs'] religious services,"[5] his subjective belief as to the legitimacy of plaintiffs' practices is not currently the issue. There has never been any suggestion that plaintiffs sought the oils for some purpose other than their religious practices or that plaintiffs were insincere in their beliefs.[6] De-

---

4. Although qualified immunity is a question of law, summary judgment is inappropriate where there is a question of material fact regarding the underlying action upon which the immunity question turns. *Poe v. Haydon,* 853 F.2d 418, 426 (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989); *Jackson v. Hoylman,* 933 F.2d 401, 403 (6th Cir.1991). In this case, the question of immunity turns on the constitutionality of defendant's imposition of an absolute ban on prayer oil. As discussed above, there is no dispute that defendant Scott did in fact ban the prayer oil and thus there is no issue of material fact with regard to the underlying action.

5. *See* Pl.Exh. B and C (attached to Pl.Supp.Brief (filed March 28, 1991)). As I stated in my first report and recommendation, however, the issue is not whether the prayer oil or incense was a necessary item for a Muslim to practice his religion, but rather whether the decision to ban these items from JCF was "reasonably related" to legitimate security or other penological interests. *See also* discussion *infra* at § II.A.

6. In *Weaver,* the Sixth Circuit considered a claim by an inmate who was part Cherokee Indian and asserted that his religious beliefs forbid him from having his hair cut. The Sixth Circuit stated:

fendant is not asserting the plaintiff's "religious freedom" is not at stake; nor is he asserting that banning Muslim prayer oil is not a "restriction on [plaintiffs'] religious practices." *See Brown,* 743 F.2d at 711; *Weaver,* 675 F.2d at 119. As the Supreme Court has stated, "[o]ne can, of course, imagine an asserted claim so bizarre, so clearly nonreligious in motivation, as to not be entitled to protection under the Free Exercise Clause; but that is not the case here." *Thomas v. Review Bd. of Indiana Employment Sec. Div.,* 450 U.S. 707, 715, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981).

Thus, it is clear that after the Sixth Circuit's opinion in *Brown v. Johnson,* issued on September 11, 1984, a reasonable warden in defendant Scott's position should have been aware that plaintiffs' religious free exercise right to Muslim prayer oils could be restricted only if the restriction was " 'reasonably and substantially' justified by official concern for internal security and inmate discipline."

Defendant has not come forth with any evidence indicating that a reasonable warden would have believed that a total ban on oil was justified by institutional concerns. In his current pleadings, he makes no effort to justify his ban on all prayer oils. His arguments address only the new policy set forth in the Bolden memo allowing the prayer oils with certain limitations. Furthermore, affidavits previously submitted by defendant, including the affidavits of Judith Kalmanek, then Assistant Deputy Director of the Bureau of Correctional Facilities, and Allen Haigh, a Deputy Warden at JCF,[7] discuss only the reasons why a particular oil, Oil of Sudan, was banned, but make no attempt to justify defendant Scott's total ban. Although it is quite possible that a regulation imposing limitations on access to, and the use of, prayer oils

could be drafted that is "reasonably and substantially justified by official concern for internal security and inmate discipline," the question of damages relates to the past injury suffered by plaintiffs when the *total* ban was in place. The issue in this case is whether an absolute ban on oils can be justified.

Although defendant has not attempted to justify his total ban, and although discovery has been stayed at his request, plaintiffs have come forth with evidence which indicates that, with the information available to defendant Scott, a reasonable warden could not have believed that institutional concerns necessitated the absolute ban. First, in a letter to plaintiff Abdul–Rahman in September 1986, Judith Kalmanek stated:

> Your letter to Director Brown regarding the small vials of religious oils for use by the Muslims has been referred to me for reply. You are correct in your assessment that prisoners in the institutions are permitted to have religious oils. However, there are some circumstances you should be aware of. In many of the facilities, the oil must be first transferred to plastic containers before it is permitted to come in. Under no circumstances are prisoners permitted to keep in their possession glass vials of oil. This is a security issue as you know. In some institutions the oil is kept by the institutional chaplain and given to the prisoner for his personal use under the chaplain's observation. This is also an acceptable alternative.

Pl.Exh. D (attached to Pl.Supp.Brief (filed March 28, 1991)). The letter indicates that a copy was sent to defendant Scott. Plaintiffs also have produced a memo to Robert Brown, MDOC Deputy Director at that time, from Rudolf Stahlberg, then Assist-

---

"[I]f the belief asserted is 'philosophical and personal rather than religious,' or is 'merely a matter of personal preference,' and not 'one of deep religious conviction, shared by an organized group,' it will not be entitled to First Amendment protection." ... Of course, if the belief is one of deep religious conviction, then [the inmate] is entitled to first amendment protections consistent with his status as a prisoner.

675 F.2d at 118 (quoting *Fielder v. Marumsco Christian School,* 631 F.2d 1144 (4th Cir.1980) (citing *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972))).

**7.** These affidavits were filed on October 24, 1988, with defendant's supplemental brief to his first motion for summary judgment.

ant Deputy Director, dated May 7, 1984, regarding musk oil for Muslim prisoners at the Huron Valley Men's Facility (HVMF). Stahlbery states:

> Mr. Utess advises that musk oil in small glass vials has been allowed in to SPSM for approximately seven years, and they have never had any problems related to it. Chaplain Burnette describes the vial as being about 1 inch high and a bit larger in diameter than a pencil.
>
> I recommend that we approve the request, but tell the vendor that they must come up with a non-glass substitute for the glass vial, if possible.

In a handwritten notation, Brown apparently advised: "OK until we have a problem." Pl.Exh. F (attached to Pl.Supp.Brief (filed March 28, 1991)).

These documents indicate that defendant Scott should have been aware that religious oils could be accommodated. He also should have been aware that the total ban was in fact contrary to MDOC policy and that oils had been allowed into State Prison of Southern Michigan at Jackson (SPSM) for a long period of time without problem.

Plaintiffs also have provided a copy of the resident store stock list from September of 1988 which indicates that during the period of the ban on religious oil, inmates were allowed to purchase in unlimited quantities items with similar properties to the prayer oil, including baby oil, skin care lotion, liquid soap, Ben Gay, and petroleum jelly. Furthermore, although the ban on Oil of Sudan was justified because it came in a glass vial, plaintiffs note that inmates were also permitted to purchase such glass items as light bulbs and mirrors in the institution store.[8] Pl.Exh. E (attached to Pl.Supp.Brief (filed March 28, 1991)).

In summary, plaintiffs have demonstrated that it was clearly established, by decisions of the Sixth Circuit, as of the date of defendant Scott's total ban, that "when an inmate's religious freedom is at stake, correctional officials may only adopt regula-

tions which are 'reasonably and substantially' justified by official concern for internal security and inmate discipline." *Brown*, 743 F.2d at 411–12. Furthermore, plaintiffs have come forth with evidence indicating that a reasonable warden, with the information available to defendant Scott, could not have believed that valid penological interests necessitated the total ban on prayer oil, while defendant has come forth with no evidence whatsoever to justify the total ban. Accordingly, defendant is not entitled to qualified immunity.

## II. Plaintiffs' Motions for Summary Judgment

Plaintiffs filed their first motion for summary judgment on October 20, 1988, prior to the appointment of counsel. Plaintiffs' counsel did not withdraw that motion during the aborted settlement negotiations and the docket indicates that defendant did not respond to that motion. Plaintiffs' counsel filed a second motion for summary judgment on December 18, 1990, to which defendant responded on February 5, 1991. Supplemental briefs to that motion were filed by plaintiffs on March 28, 1991, and June 6, 1991.

### A. Protection of Religious Practices by the Free Exercise Clause

Although there was some discussion at the hearing on these motions regarding the role of prayer oil in the Muslim religion, this issue should not sidetrack the Court or the parties. It is clear that a prisoner "need not show that his religious practice is absolutely mandated in order to receive constitutional protection." *Moskowitz v. Wilkinson*, 432 F.Supp. 947, 949 (D.Conn. 1977). As one district court has explained:

> The showing of a belief or practice deeply rooted in religious doctrine is sufficient to trigger the Government's obligation under the Constitution to justify its restriction as reasonably necessary in

---

**8.** Plaintiffs have also argued that the existence of the new policy outlined in the Bolden memo demonstrates that a total ban was not justifiable. Because, for purposes of the immunity question only, I have considered the informa-

tion which was available to defendant Scott when he imposed the ban and while it was in effect, I reserve discussion of the new policy for the next section dealing with plaintiffs' motions for summary judgment.

support of an important or substantial interest. The Government does not avoid this obligation by pointing to other believers who accept less rigorous views and practices.

*Id.* at 949–50 (footnote omitted).[9]

The affidavit of Imam Tamar Joshua submitted by plaintiffs states:

> The use of oils by Muslims is an important part of our religious faith. The Hadith [along with the Qur'an a primary source for Al–Islam] is the source of the instruction to Muslims to use oils during prayer.
>
> The Hadith contains the sayings of the Prophet Mohammed. According to Mohammed in the Hadith, a Muslim is required to prepare himself for prayer by bathing, wearing his best clothes, and using his best oils. Bathing alone is not sufficient.
>
> Oils are a significant part of Islam.... Oils are routinely used in prayer services by Muslims in free society.

Affidavit of Imam Tamar Joshua, at ¶¶ 3–5 (filed June 27, 1991). Even the affidavit of Imam Mohamad Mardini submitted by defendant states:

> That the Qur'an suggests that followers of Islam wear their "beautiful apparel" for group religious observances. The commentary to the Qur'an defines "beautiful apparel" to mean not only clothes that add grace to the wearer, but cleanliness, attention to hair and other small details so that one does not offend other[s] by his/her appearance or odor. There is no specific reference to the use of oils to achieve this end in the Qur'an.
>
> That the use of scented oils is one means by which followers of Islam present themselves as clean smelling for group religious observances. Scented oils are not obligatory or necessary for this purpose and are merely a social custom by followers of Islam in group religious observances.
>
> That showering is an alternative and acceptable means of ensuring that one is not offensive to another by his/her smell.

Affidavit of Imam Mardini, at ¶¶ 4–6 (filed May 15, 1991).[10] Despite the differences between these two explanations,[11] both in-

---

**9.** *See also Prushinowski v. Hambrick,* 570 F.Supp. 863, 867–68 (E.D.N.C.1983); *St. Claire v. Cuyler,* 481 F.Supp. 732 (E.D.Penn.1979) (in order for prisoner to make out a free exercise claim, he must show "first, that a bona fide religion is involved; second, that at issue is a practice that is a tenet or custom of that religion; third, that the plaintiff is a sincere believer"), *rev'd in part and aff'd in part on other grounds,* 634 F.2d 109 (3rd Cir.1980); *Monroe v. Bombard,* 422 F.Supp. 211, 215 n. 4 (S.D.N.Y. 1976) ("There is no necessity ... that the religious practice at issue be absolutely mandated by the doctrinal requirements of religious observance in order to bring plaintiffs' claim within the ambit of constitutional protection. It is not for the courts to decide which practices or observances are or are not strict requirements of a particular faith."); *Teterud v. Gillman,* 385 F.Supp. 153 (S.D.Iowa 1974) (to evaluate whether practice is entitled to First Amendment protection court must look to whether plaintiff's beliefs constitute a religion and whether plaintiff possesses a sincere belief in his creed), *aff'd sub nom. Teterud v. Burns,* 522 F.2d 357, 360 (8th Cir.1975) ("The appellants' argument appears to be premised on the theory that [the inmate] must prove that wearing long braided hair was an absolute tenet of the Indian religion practiced by all Indians. This is not the law. Proof that the practice is deeply rooted in religious belief is sufficient. It is not the province

of government officials or court[s] to determine religious orthodoxy.").

**10.** With regard to the statements in this affidavit, two points should be noted. First, it is irrelevant for purposes of this case whether oil is used in group, as opposed to individual, worship because defendant Scott completely banned all oil; there is no evidence that he permitted it to be used for group worship but did not allow individuals to possess it for personal worship. Secondly, even if showering is an acceptable substitute for the oil, defendant has not asserted that Muslim inmates were allowed to shower in preparation for their services. Without such a showing, it is irrelevant that showering is an acceptable alternative to the use of oils because inmates' opportunities to shower are regulated by prison officials.

**11.** In *Thomas v. Review Bd. of Indiana Employment Sec. Div.,* 450 U.S. 707, 715–16, 101 S.Ct. 1425, 1430–31, 67 L.Ed.2d 624 (1981) the Supreme Court explained:

> Intrafaith differences ... are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences in relation to the Religion Clauses. One can, of course, imagine an asserted claim so bizarre, so clearly nonreligious in motivation, as to not be

dicate that, under the standards set forth by the federal courts discussed above, the use of prayer oils in the Muslim religion is entitled to constitutional protection under the free exercise clause. As noted above, defendant Scott is not now contending that Muslim prayer oils are not entitled to first amendment protection.

### B. Constitutionality of Total Ban

In *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights the regulation is valid if it is reasonably related to legitimate penological interests." The regulation must be reasonable and cannot be "an exaggerated response to speculative security objectives." *Whitney v. Brown,* 882 F.2d 1068, 1078 (6th Cir.1989).

Plaintiffs allege that they are entitled to summary judgment on their damage claims because defendant has not set forth any penological justification for his total ban on prayer oil. As discussed above, plaintiffs have come forth with evidence indicating that there was no justification for a complete ban. Plaintiffs have also argued that the existence of the new policy demonstrates that a total ban was not justifiable. The new policy provides that prisoners may have nonflammable oils without florescent qualities in plastic containers, in limited quantities. To assure the integrity of the oils and the administrative feasibility of monitoring the source of the oils, oils may only be obtained by purchase from a single authorized vendor, although prisoners will be permitted to submit suggestions regarding alternative vendors, and only one kind of oil will be allowed. Oils are not allowed for prisoners classified at Level VI, or at temporary, punitive, or administrative segregation; this restriction is not applicable to prisoners in protective segregation.

Defendant counters that this new policy is not admissible evidence because of Fed. R.Evid. 407 which provides:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule **does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ... feasibility of precautionary measures....**

(emphasis added). The purpose of this rule is to encourage remedial measures without such measures being used as evidence of "an admission of liability." To the extent that this rule is at all applicable to this case, it indicates on its face that evidence of subsequent measures can be introduced to prove the *feasibility* of the subsequent measure. *See also* Pl.Supp.Brief, at 4–5 (citing cases). Analogizing to this case, that would mean that plaintiffs may introduce the new policy now in effect which limits access to, but does not totally ban, religious oils to show that it was feasible that oils could have been accommodated within the parameters of institutional concerns.[12] The Supreme Court in *Turner v. Safley,* specifically stated that "if an inmate can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the [challenged] regulation does not satisfy the reasonable relationship standard." 482

---

entitled to protection under the Free Exercise Clause; but that is not the case here, and the guarantee of free exercise is not limited to beliefs which are shared by all members of a religious sect. Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation.

*See also Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976).

**12.** As plaintiffs point out, it was defendant who raised the issue of the new policy and submitted the Bolden memo as evidence. It is disingenuous for defendant to argue that the case is moot because an alternative constitutional policy is now in place while at the same time arguing that the policy cannot be considered as evidence that an alternative policy was feasible.

U.S. 78, 91, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987).

To defeat a properly supported summary judgment motion, the adverse party, in this case defendant, must submit more than "some evidence"; the evidence must be sufficient to support a jury verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Furthermore, the Sixth Circuit has stated:

> the state cannot merely assert that its interests require restrictions on prisoners' exercise of their first amendment rights. It must prove the necessity of any restriction it imposes, and it must demonstrate that "the prison's restriction was a reasonable time, place, and manner restriction of a First Amendment right."

*Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir.1985) (*quoting Weaver*, 675 F.2d at 119) (other citations omitted). To justify its restriction, "the state must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health or safety in order to establish that its interests are of the 'highest order.'" *Weaver*, 675 F.2d at 119.

As discussed above, defendant has submitted absolutely no evidence to demonstrate that the total ban on prayer oil was reasonable and penologically justified; there is nothing to suggest that plaintiffs' request for oil could not have been accommodated through an easy alternative policy, such as the one now in place. Although the affidavit of Dan Bolden sets forth various penological concerns, all of those concerns were addressed in the new policy permitting the oils. Both the affidavits of Dan Bolden and Judith Kalmanek submitted by defendant clearly indicate that penological concerns could have easily been addressed by a less restrictive policy permitting oils with some limitations. "The existence of obvious, easy alternatives," such as those discussed in Kalmanek's September 1986 letter to plaintiff Abdul–Rahman, "may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Turner v. Safley*, 482 U.S. at 90, 107 S.Ct. at 2262.

Finally, as discussed above, the evidence submitted by plaintiffs indicates that at the time of the ban defendant Scott should have been aware that religious oils could be accommodated with some restrictions and that they had in fact been accommodated in other facilities within MDOC without problems.

For these reasons, plaintiffs are entitled to summary judgment on their claim for damages resulting from defendant Scott's complete ban on religious oils.

### C. Injunctive Claims

As discussed above, plaintiffs' claims for injunctive relief are now moot because defendant Scott has retired, and the court has no jurisdiction to consider moot claims.

### III. Ban on Incense

■ Since my last report and recommendation, most of the parties' attention has been focused on the ban on prayer oil, although plaintiffs' complaint challenged both the ban on oils and the ban on incense. The Bolden memo states that incense will continue to be banned.

With regard to the total ban on incense, defendant has submitted evidence outlining the penological justification for the ban. The affidavit of Dan Bolden states:

> Religious incense was prohibited, and continues to be prohibited, because the odor can be used to mask the smell of marijuana or "spud juice", or smoke from arson attempts. In addition, some prisoners may find the pervasive smell of incense offensive which can lead to prisoner disruption in the housing unit.

Bolden Aff., at ¶ 4. Plaintiffs have come forth with no evidence demonstrating that this ban is unreasonable or that an alternative, less restrictive policy, is possible. Accordingly, defendant should be granted summary judgment on plaintiffs' claim relating to the total ban on incense.

### RECOMMENDATION

For the reasons stated above, it is recommended that:

(1) Defendant's second motion for summary judgment, filed on October 29, 1990, be granted only as it applies to plaintiffs' claims relating to the ban on incense and be denied in all other respects;

(2) Plaintiffs' motions for summary judgment, filed on October 20, 1988, and on December 18, 1990, be denied on the injunctive claims, which should be dismissed as moot;

(3) Plaintiffs' motions be granted with regard to their damage claims relating to the ban on prayer oil, and denied with regard to their damage claims relating to the ban on incense;

(4) Plaintiffs be given 30 days from the date of the Court's ruling on this report and recommendation to brief and document their claim for class certification or withdraw their request for class certification, and defendant then be given 10 days to respond; and

(5) After the Court has ruled on this report and recommendation, a date for submission or a trial on plaintiffs' damages be set.

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. § 636(b)(1); E.D.Mich. LR 72.1(d)(2). Failure to file objections within the specified time constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Ivey v. Wilson,* 832 F.2d 950, 957–58 (6th Cir.1987); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

Dated: March 27, 1992 Ann Arbor, Michigan.